591 So.2d 824 (1991)
Sean McWATERS, Annette McWaters, Patricia O'Neal, Lois O'Neal, Leon O'Neal, and 79 Other Residents of Edgewater Park Subdivision
v.
CITY OF BILOXI, Mississippi.
No. 89-CA-1287.
Supreme Court of Mississippi.
December 4, 1991.
*825 Amanda B. Kennerly, Ocean Springs, for appellants.
Raymond D. Carter, Kimberly G. Starks, Compton, Crowell & Hewitt, Biloxi, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and PITTMAN, JJ.
PRATHER, Justice, for the Court:
Appellants are residents of the Edgewater Park Subdivision in the city of Biloxi. They appeal from a judgment entered on October 30, 1989, by the Circuit Court of Harrison County, Second Judicial District, affirming a rezoning order issued by the Biloxi City Council on August 29, 1988, reclassifying certain property owned by J & R Properties and Wilma Hicks Mosley from R-3A, multi-family residential, and R-1A, single-family residential, respectively, to R-O, residential offices.
The Appellants argue there was insufficient evidence warranting a finding by both the city council and circuit court that there had been a significant and substantial change in the character of the neighborhood and an identifiable public need for rezoning. A claim of so-called "spot zoning" is also assigned. Considering the facts and applicable law, this Court affirms.

I.
On or about April 14, 1988, J & R Properties, a business interest of Joseph and Richard Salloum, and Wilma Hicks Mosley, made joint application to the Biloxi Planning Commission for the rezoning of four and one-half (4 1/2) lots located in Block 1 on the southwestern periphery of the Edgewater Park Subdivision. Applicants sought re-classification of lots 1 and 2 and the east half of lot 3 (owned by J & R Properties) and lots 8 and 10 (owned by Mosley) from R-3A, multi-family residential, and R-1A, single-family residential, respectively, to R-O, residential offices.
Block 1, the site of the subject property, is bounded on the south by Highway 90, known also as Beach Boulevard; on the east by Edgewater Drive, a thoroughfare running north and south through the heart of the Edgewater Park Subdivision; on the north by Marshall Drive, a street running east and west through the southern portion of Edgewater Park, and on the west by property zoned C-2, neighborhood commercial. The Edgewater Shopping Mall, which was constructed in 1963, and other similar commercial developments, are located west of Block 1.
Following public hearings, and in the wake of solid recommendations approving the rezoning from both the Zoning Text and Map Committee and the Biloxi Planning Commission, the Biloxi City Council, after determining there had been a substantial change in the character of the neighborhood and an identifiable public need for the rezoning, adopted Ordinance No. 1528 amending the Comprehensive Zoning Map of the city of Biloxi. The effect of the change in zoning classification for the subject properties to R-O was to permit use of the properties for residential office purposes, subject to four (4) specified stipulations or conditions which the applicants freely accepted in writing.
Aggrieved by the rezoning decision made on August 29, 1988, by the city council, the McWaters and other residents of Edgewater Park Subdivision, filed an appeal. The Circuit Court of Harrison County, Second Judicial District, sitting as an appellate court, reviewed the record and made specific findings of fact. From those facts the court concluded as a matter of law "... that the Biloxi Planning Commission and the City Council of the City of Biloxi had a substantial basis for the rezoning of the subject property and the Council's decision in this regard was not unreasonable, arbitrary or capricious."
Specifically, the circuit court found ample evidence the surrounding neighborhood had undergone a change in its character consistent with more commercial development and that the existence of comprehensive land use plans for Biloxi adopted in 1970 and again in 1979 supported the conclusion the rezoning was a valid and logical response to a public need. In short, the *826 circuit court held the decision of the city council was "fairly debatable" and upheld the adoption of Ordinance 1528.

II.
In addition to the oral testimony taken during the public hearing conducted on August 22, 1988, the City Council received for its consideration (1) the report of the Zoning Text and Map Committee; (2) the legal opinion of the City Attorney which recommended rezoning; (3) the legal opinion of the attorney for the Planning Commission which, likewise, recommended rezoning; (4) the minutes of the June 16, 1988, Planning Commission public hearing; (5) the amended site plan of the proposed residential office improvements to be placed on the lots by the applicants; (6) the Comprehensive Zoning Map of the city of Biloxi, and (7) the entire Planning Commission file for Case No. 88-21.
The record reviewed by the circuit judge and presently before us contains the following evidence supporting the action taken by the Biloxi City Council:
(1) Lots 1 and 2 and the east half of lot 3, Block 1, are presently zoned R-3A, multi-family residential. Lots 8 and 10 of Block 1, which are adjacent to and immediately north, are presently zoned R-1A.
(2) The Edgewater Shopping Mall and other similar commercial developments are located immediately to the west of Block 1 of the Edgewater Park Subdivision within which the subject property is located. This property is presently zoned C-2, neighborhood commercial.
(3) The zoning classification of the two and a half (2 1/2) lots adjacent to and immediately west of lots 1, 2, and the east one-half (1/2) of lot 3 was changed from R-1A, single-family residential, to R-3A, multi-family residential, in March of 1981. A three story time-share condominium is presently located on this property.
(4) The zoning classification of the two (2) lots adjacent to and immediately west of lots 8 and 10 was changed from R-1A to R-O in June of 1981. Palm Plaza, an office complex, is presently located on this property.
(5) The zoning classification of lots 2, 3, 4, and 5 in Block 6 located across Marshall Road immediately north of the subject property was changed from R-1A, single-family residential, to R-O in March of 1981. Although the lot is presently available for commercial development, a day-care center was formerly operated at this location.
(6) In October of 1987 the city council approved a five foot front yard variance and a five foot side yard variance for the office complex located on lots 6 and 7 which are adjacent to and immediately west of the northern portion of the subject property. As a result of these variances, the office building is located less than five feet from the applicant's property line. This action by the city council has had a negative impact on the residential utility of lots 8 and 10 (owned by Mosley) in the Edgewater Park Subdivision.
(7) Future Land Use Plans approved in 1970 and 1979 targeted the subject property for commercial development.
(8) The zoning change approved by the city council for the subject property is harmonious with the future land use plans.
(9) The site of the subject property is in an area considered a major business growth corridor of the city of Biloxi.
(10) Since 1970 and the initial adoption of the future land use plan for West Biloxi, there have been numerous commercial developments within the growth corridor.
(11) The properties immediately west of the three parcels rezoned in March and June of 1981 continue to be the most densely developed commercial property in the city of Biloxi, and that trend has continued for the last twenty years.
(12) The tranquility of the surrounding residential neighborhood to the north and east will be perpetuated by the four covenants or conditions for the proposed development of the subject property. These include limited vehicular access, as to both ingress and egress, to the subject property; a fifty-five (55) foot setback restriction from the west curb of the subject property; *827 the installation of lighting in such a way as to not reflect into the adjoining residential property; and the preservation of trees.
(13) With respect to lots 1 and 2 and one-half (1/2) of lot 3 (owned by J & R), it is unlikely that a zoning change from R-3A, multi-family residential, to R-O, residential offices, would be more intrusive to the surrounding property owners.
(14) A refusal to rezone lots 8 and 10 (owned by Mosley) from R-1A to R-O would appear to be arbitrary since this parcel is surrounded on three sides by properties which were rezoned in 1981 from R-1A to either R-3A or R-O.
(15) An R-O zoning classification is in harmony with the city of Biloxi's Comprehensive Plan for the property in question.

A.
Our law is well settled that before property is reclassified from one zone to another, an applicant seeking rezoning must convince the zoning authorities either
(1) there was a mistake in the original zoning or

(2)(a) the character of the neighborhood has changed to such an extent as to justify rezoning and (b) that a public need exists for rezoning.
Faircloth v. Lyles et al., 592 So.2d 941, 943 (October 16, 1991); Luter v. Hammon, 529 So.2d 625, 628 (Miss. 1988); Saunders v. City of Jackson, 511 So.2d 902, 906 (Miss. 1987).
Neither the joint applicants nor the objectors have ever claimed or suggested there was a mistake in the original zoning. Accordingly, our task on appeal is to determine whether or not the record supports rezoning of the property in question on the basis of a substantial change in the character of the neighborhood and a public need for rezoning.
The decisions of municipal zoning authorities, because they are legislative decisions, are presumed valid. A comprehensive zoning ordinance adopted by a city is presumed to be "well planned and adopted to be permanent." Woodland Hills Conservation Ass'n., Inc. v. City of Jackson, 443 So.2d 1173, 1180 (Miss. 1983).
In examining a zoning order issued by a city council, circuit courts sit as appellate courts with a restricted scope of judicial review. Those attacking a zoning order must show that it is "arbitrary, capricious, discriminatory, or beyond the legal authority of the city board, or unsupported by substantial evidence." Ridgewood Land Co. v. Moore, 222 So.2d 378, 379 (Miss. 1969). Put otherwise, the decision of the governing body of a municipality may not be set aside if the point in controversy is "fairly debatable." Faircloth v. Lyles et al., at 943. Here, "the fairly debatable standard applies to the legislative questions whether there has been a change in the character of the neighborhood and whether there is a public need for the rezoning." Luter v. Hammon, 529 So.2d at 628.

B.
What then is the evidence of a change in the neighborhood? Since 1981 there have been three separate and distinct zoning changes from R-1, single-family residential, to either R-3A, multiple-family residential, or R-O, residential offices. In 1987 the variance granted by the city council greatly diminished the residential utility of lots 8 and 10 of the Edgewater Park Subdivision.
Evidence that nearby property has been rezoned supports a finding by the city council there has been a material or substantial change in the neighborhood since the inception of the comprehensive zoning plan. Martinson v. City of Jackson, 215 So.2d 414, 418 (Miss. 1968). In Martinson we said:
Illustrative of a material change is Nelson v. County Council for Montgomery County, 214 Md. 587, 136 A.2d 373 (1957). Certain properties in the area sought to be rezoned had been changed from multiple-family residences, one to commercial office buildings, and one to general commercial; further an electric power substation had been erected *828 in one section of the property and a public paved parking lot in another portion. The Court held this was evidence from which the Council could find the character of the neighborhood had changed to the extent that the rezoning should be granted... . [T]his Court would not necessarily require as drastic changes as in the Nelson case. [emphasis supplied]
What is the evidence demonstrating an identifiable public need? The city council had before it a future land use study prepared in 1979. The findings of that study, which target the property in question for commercial development, provide a substantial basis for concluding that there is a public need for commercially zoned properties on the southwestern periphery of the Edgewater Park Subdivision. Luter v. Hammon, 529 So.2d at 629.
Appellants take the position there is a glut of commercial real estate already existing and, therefore, there is no public need for rezoning. We held, however, in Howie v. Autrey, 209 So.2d 904, 905-06 (Miss. 1968), that the rezoning of certain residential property for commercial use was not unreasonable, arbitrary or capricious, even though there may not have been a present demand for more commercial property in the area. One of the factors leading to our decision was that the subject property had commercial property on both the east and west sides. In the case at bar, two surrounding and nearby parcels located to the north and west of the lots in question have already been rezoned to R-O, residential offices.
This Court has recognized the duty of municipal zoning authorities, acting legislatively, to assess their needs by "look[ing] out the window" and acting on the basis of what they see happening in their community. Luter v. Hammon, 529 So.2d at 629. Here the record and, in particular, the future land use plans adopted by the city of Biloxi in 1970 and 1979 targeting Block 1 for commercial use and development, provide a substantial basis for the conclusion reached by both the city council and the circuit judge that there exists an identifiable public need for rezoning. This Court is unable to say the reclassification of the subject property is not consistent with sound, long-range planning for this particular area.

C.
This Court does not sit as a super-zoning commission. "The Courts should not constitute themselves as a Zoning Board for a municipality." Westminster Presbyterian Church v. City of Jackson, 253 Miss. 495, 176 So.2d 267, 272 (1965). We conclude, therefore, the decision made by the Biloxi City Council was not unreasonable, arbitrary or capricious. It was at least fairly debatable.

III.
The Appellants also assail the action of the Biloxi City Council as "spot zoning," a challenge frequently made in zoning litigation. The term "spot zoning" is used by the courts to describe a zoning amendment which is not in harmony with the comprehensive or well-considered land use plan of a municipality. In McKibben v. City of Jackson, 193 So.2d 741, 744 (Miss. 1967), we stated:
There is a clear cut distinction between a validly enacted amendatory zoning ordinance and a "spot zoning" ordinance. Not all amendments which change or alter the character of a use district fall within the category of "spot zoning" as we generally understand the term. The term "spot zoning" is ordinarily used where a zoning ordinance is amended reclassifying one or more tracts or lots for a use prohibited by the original zoning ordinance and out of harmony therewith. Whether such an amendment will be held void depends upon the circumstances of each case. The one constant in the cases, as stated by the textwriter, where zoning ordinances have been invalidated due to "spot zoning" is that they were designed "to favor" someone. See 1 Yokley Zoning Law and Practice §§ 8-1 to 8-3 (3rd ed. 1965).
This Court held in Ridgewood Land Company v. Simmons, 243 Miss. 236, 137 *829 So.2d 532, 538 (1962), "it is not spot zoning if [a zoning ordinance or amendment] is enacted in accordance with a comprehensive zoning plan." It appears from the record in this case the rezoning action taken by the city council was not "spot zoning" inasmuch as the rezoning appears to be in harmony with the comprehensive zoning plan of the city of Biloxi with respect to the subject property. Accordingly, a charge of "spot zoning" is not well founded.

IV.
The future land use studies conducted in 1970 and in 1979 targeted the entire block in which the subject property is located for future commercial development. If in fact there are future re-classifications for commercial expansion, then perhaps they will be confined to this general area.
The homeowners are understandably concerned about the integrity of their attractive residential neighborhood. This Court is inclined, however, to agree with the city fathers and the circuit court that the tranquility of the surrounding neighborhood will be preserved to a great extent by the four covenants for the proposed development which have been agreed upon and unconditionally accepted in writing by the applicants and which are to be filed for record as covenants running with their property.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.