# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CT-00823-SCT

*FRED H. DREWS, III,*
*AND BONNIE DREWS*

*v.*

*CITY OF HATTIESBURG*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/13/2003 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | LAWRENCE C. GUNN, JR. |
| ATTORNEY FOR APPELLEE: | CHARLES E. LAWRENCE, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED, AND THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT IS REVERSED AND RENDERED - 03/31/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Lee Medical Development, LLC, applied for six zoning variances with the City of Hattiesburg concerning a proposed medical office project.  Two of the requested variances were subsequently withdrawn.  The Board of Adjustments granted four and denied two.  Lee Medical and Fred and Bonnie Drews, residents of the area in question who opposed the variances, both appealed.  On appeal, the Hattiesburg City Council approved all six variances.

The Forrest County Circuit Court affirmed. The Drewses' appeal was assigned to the Court of Appeals, which reversed and rendered. *See Drews v. City of Hattiesburg*, 2004 WL 2093727 (Miss. Ct. App. 2004). The Court of Appeals found that "while the variance[s] could arguably benefit the community, the city's decision is directly contrary to the uses permitted by the city's zoning ordinance for [the] property . . . and constitutes spot zoning." *Id.* at *1.

¶2.     We granted the City of Hattiesburg's petition for writ of certiorari, 892 So. 2d 824 (Miss. 2005), and now affirm the Court of Appeals' judgment and reverse and render the circuit court's judgment.

## FACTS[1]

¶3.     Lee Medical Development purchased six lots of land that were originally developed for residential housing adjacent to the hospital in Hattiesburg, Mississippi. These lots were zoned B-1, professional business district, at the time of the purchase. Lee Medical requested six variances to the city's zoning ordinance in order to build a 60,000 square foot medical office building, of which the Hospital intended to lease a major portion.

¶4.     The Hattiesburg Board of Adjustments held a public hearing to consider the requests. The board granted four of the variances, which reduced the required "setback" and lessened requirements for numbers of parking spaces specified in the zoning ordinance for medical office buildings. The board denied two of the variances, which would have allowed an increase in building height from 35 to 45 feet and increased the size of a building under one roof from 10,000 to 60,000 square feet. Both the Drews and Lee Medical sought review by the

---

[1]The facts are largely taken from the Court of Appeals' decision.

2

Hattiesburg City Council. The city council voted to grant all six variances. The Forrest County Circuit Court affirmed the city council.

## STANDARD OF REVIEW

¶5. The standard of review in zoning cases is whether the action of the board or commission was arbitrary or capricious and whether it was supported by substantial evidence. *Perez v. Garden Isle Community Ass'n*, 882 So. 2d 217, 219 (Miss. 2004) (citing *Broadacres, Inc. v. City of Hattiesburg*, 489 So.2d 501, 503 (Miss. 1986)). Thus, zoning decisions will not be set aside unless clearly shown to be arbitrary, capricious, discriminatory, illegal or without substantial evidentiary basis. *Perez*, 882 So. 2d at 219; *Carpenter v. City of Petal*, 699 So. 2d 928, 932 (Miss. 1997). There is a presumption of validity of a governing body's enactment or amendment of a zoning ordinance and the burden of proof is on the party asserting its invalidity. *Perez*, 882 So. 2d at 219; *Carpenter*, 699 So. 2d at 932. Where the point at issue is "fairly debatable," we will not disturb the zoning authority's action. *Perez*, 882 So. 2d at 219; *Carpenter*, 699 So. 2d at 932.

¶6. The standard of review for questions of law is de novo. *Duncan v. Duncan*, 774 So. 2d 418, 419 (Miss. 2000).

## DISCUSSION

### WHETHER THE VARIANCE REQUESTS AMOUNTED TO AN IMPERMISSIBLE USE OF THE PROPERTY UNDER THE ZONING ORDINANCES.

¶7. Hattiesburg's City's Land Development Code defines "variance" as

> a modification of the literal provisions of this Code which the Board of Adjustment and/or the City Council is permitted to grant

3

when strict enforcement of said provisions would cause undue hardship (such hardship cannot be self created or of an economic nature) owing to circumstances unique to the individual property on which the variance is sought.

¶8. While variances are allowable, the question is whether Hattiesburg, because of the number and nature of the variances requested, was actually attempting something more drastic, such as rezoning, or something impermissible, such as spot zoning.[2] The Court of Appeals determined that an adoption of the variances constituted spot zoning.

¶9. Variances which are incompatible with the terms of an ordinance should not be granted:

> Variances were conceived initially as a means for granting relief from height, bulk, and location restrictions in the ordinances which rendered use of the property impossible or impractical. No conceptual problems arise when the variance is granted to authorize minor departures from the terms of the ordinance; e.g. to permit a landowner to place the structure on his

---

[2]In *McWaters v. City of Biloxi*, 591 So. 2d 824, 828 (Miss. 1991), we discussed "spot zoning":

The term "spot zoning" is used by the courts to describe a zoning amendment which is not in harmony with the comprehensive or well-considered land use plan of a municipality. In *McKibben v. City of Jackson*, 193 So. 2d 741, 744 (Miss. 1967), we stated:

There is a clear cut distinction between a validly enacted amendatory zoning ordinance and a "spot zoning" ordinance. Not all amendments which change or alter the character of a use district fall within the category of "spot zoning" as we generally understand the term. The term "spot zoning" is ordinarily used where a zoning ordinance is amended reclassifying one or more tracts or lots for a use prohibited by the original zoning ordinance and out of harmony therewith. Whether such an amendment will be held void depends upon the circumstances of each case. The one constant in the cases, as stated by the textwriter, where zoning ordinances have been invalidated due to "spot zoning" is that they were designed "to favor" someone. *See* 1 Yokley Zoning Law and Practice §§ 8-1 to 8-3 (3rd ed. 1965).

lot nearer the lot line than is permitted by the set-back or side-yard requirements. Such relief does not authorize a use inconsistent with the ordinance and, consequently, does not constitute rezoning under the guise of a variance. . . . Bulk variances afford relief to the landowner who proves unnecessary and unique hardship, but does not request relief which offends the spirit of the ordinance.

On the other hand, serious questions arise when a variance is granted to permit a use otherwise prohibited by the ordinance; e.g., a service station or quick-stop grocery in a residential district. The most obvious danger is that the variance will be utilized to by-pass procedural safeguards required for valid amendment.

Robert C. Khayat & David L. Reynolds, *Zoning Law in Mississippi*, 45 Miss. L.J. 365, 383 (1974) (footnotes omitted).

¶10. We have never limited the number of variances which can be requested at a given time, and we will not do so in this opinion. However, the changes proposed in the six variances are so dramatic that they constitute a rezoning to B-3, two levels beyond the B-1 (professional business district) lots in question. The differences between B-1 and B-3 are so extreme that if the variances are granted, spot zoning would occur. The largest building that could be built in B-1 was 10,000 square feet. One of the granted variances would allow a single building on all the lots at a size of 60,000 square feet. The other variances included increasing the maximum allowed building height by 10 feet from 35 to 45 feet; reducing the number of parking places from 360 to 169; increasing the allowed percentage of "impervious surface" by 13% from 60% to 73%; reducing the minimum front "set back" from 25 feet to 10 feet; and allowing parking places in the front "set back" area.

¶11. It is clear that the City of Hattiesburg has attempted to bypass the safeguards provided by the rezoning process in that the need for a variance must be proven by only a preponderance of the evidence while the need for rezoning must be proven by clear and convincing evidence. *See Barnes v. Bd. of Supervisors*, 553 So. 2d 508, 510, 511 (Miss. 1989); *Broadacres, Inc. v. City of Hattiesburg*, 489 So. 2d at 503. Hattiesburg's proposed variances are not minor departures from the scope and intent of the B-1 classification. Lee Medical and Hattiesburg failed to present any evidence that the current zoning provisions present an undue hardship or that unique circumstances are present. *See* Khayat & Reynolds, 45 Miss. L.J. at 383.

## CONCLUSION

¶12. Finding that the proposed variances constituted a rezoning in fact, the effect of which is spot zoning, we affirm the Court of Appeals' judgment, reverse the circuit court's judgment, and render judgment here denying the six zoning variances requested by Lee Medical Development, LLC.

¶13. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED, AND THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT IS REVERSED AND RENDERED.**

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON, GRAVES AND DICKINSON, JJ., CONCUR. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**