# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-00104-SCT

*MARK C. MODAK-TRURAN AND ANITA K.*
*MODAK-TRURAN*

*v.*

*MAYOR HARVEY JOHNSON, IN HIS OFFICIAL*
*CAPACITY ONLY, THE CITY COUNCIL OF*
*JACKSON, MISSISSIPPI, CAROL N. SIMMONS*
*AND WILLIAM J. SIMMONS, DECEASED*


| | |
|---|---|
| DATE OF JUDGMENT: | 12/04/2007 |
| TRIAL JUDGE: | BOBBY BURT DELAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MARK C. MODAK-TRURAN (PRO SE) |
| | ANITA MODAK-TRURAN (PRO SE) |
| ATTORNEYS FOR APPELLEES: | PIETER JOHN TEEUWISSEN |
| | CLAIRE BARKER HAWKINS |
| | CRANE D. KIPP |
| | ROBERT P. WISE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 08/13/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2008-CA-00105-SCT

*DANIEL M. BAKER AND KATHERINE BAKER*

*v.*

*MAYOR HARVEY JOHNSON, IN HIS OFFICIAL*
*CAPACITY ONLY, AND THE CITY COUNCIL OF*
*JACKSON, MISSISSIPPI, AND CAROL AND*
*WILLIAM SIMMONS, DECEASED d/b/a THE*
*FAIRVIEW INN*

DATE OF JUDGMENT:             12/04/2007
TRIAL JUDGE:                  BOBBY BURT DELAUGHTER
COURT FROM WHICH APPEALED:    HINDS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:     KATHERINE BAKER (PRO SE)
                              DANIEL M. BAKER (PRO SE)
ATTORNEYS FOR APPELLEES:      PIETER JOHN TEEUWISSEN
                              CLAIRE BARKER HAWKINS
                              CRANE D. KIPP
                              ROBERT P. WISE
NATURE OF THE CASE:           CIVIL - OTHER
DISPOSITION:                  REVERSED AND RENDERED - 08/13/2009
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.    The Jackson City Council adopted two amendments to the city's zoning ordinance, allowing the Fairview Inn, a bed and breakfast inn, to operate a restaurant. Certain neighbors opposed the amendments and appealed to the Circuit Court of the First Judicial District of Hinds County. Ultimately, the circuit court upheld the amendments, and the opponents of the amendments have appealed to this Court. Finding that the amendments constitute illegal spot zoning, we reverse the circuit court and render judgment here in favor of the appellants.

**Facts**

¶2.    The Fairview Inn is located in a residential zone in the Belhaven historic preservation district in the City of Jackson. At the time in question, the Inn was owned by William and Carol Simmons, but was sold to Sharp Hospitality, LLC, in 2006. Although the Fairview Inn is surrounded by mostly residential dwellings, it also borders commercial properties located along North State Street. The appellants, Mark and Anita Modak-Truran and Daniel and

2

Katherine Baker, live directly across Fairview Street from the Inn. All four of the appellants are attorneys and have represented themselves throughout these proceedings.

¶3. All of these properties are located in an "R-2 Single-Family and Two-Family Residential District." According to the Jackson City Zoning Ordinance,

> The purpose of this district is to provide areas for the development of low to medium density residential uses and structures. It is the intent of this Ordinance that these districts be located in areas of the City where a protected environment suitable for moderate density residential use can be provided, as well as in established moderate density residential areas as a means to ensure their continuance.

Jackson, Miss., Zoning Ordinance § 602.05 (1974).

¶4. In 1993, the City granted the owners of the Fairview Inn a permanent use permit to operate a "Bed and Breakfast Inn, Class B." The zoning ordinance defines a "Bed and Breakfast Inn, Class B" as

> An Owner occupied dwelling which is the primary residence of the owner and where a portion of the dwelling is available for short-term lodging and where receptions or other social gatherings may be held. Meals may only be served to lodgers or guests of receptions and other *social gatherings*.

Jackson, Miss., Zoning Ordinance § 202.17 (2002) (emphasis added).

¶5. In 2003, the Inn began to advertise itself as a restaurant open to the general public. The Inn had taken the position that serving meals to the public on a reservation-only basis would qualify as a "social gathering" and would not violate its use permit as a Class B bed and breakfast inn. On September 22, 2003, the City's zoning administrator notified the Fairview Inn via letter that it could not operate such a restaurant under its current use permit. According to the letter, "it has never been the city's intent that a Bed & Breakfast Inn 'Class B' be permitted to serve dinner on a nightly basis." The letter went on to "caution [the Inn]

3

against the sale of regular dinners to the public under the caption of 'social gatherings', as is only permitted by restaurants properly designated and operating within the City."

¶6.     Two days later, after meeting with the owners of the Inn, the zoning administrator wrote another letter, stating that "the Fairview Inn does not currently violate the terms of the Zoning Ordinance." The administrator was now of the opinion that "social gatherings" could also include "social events whereby the host or hostess schedule [sic] an event prior to the actual date and make [sic] arrangements with the Inn for service to be provided."

¶7.     In the meantime, the attorney for the Simmonses began making overtures to the City for amendments to the zoning ordinance that would allow the Fairview Inn to serve meals to the public. The first proposed amendment created a new zoning definition titled "Bed and Breakfast Inn Class B with Restaurant." The amendment provides

> Section 202.17(a) Bed and Breakfast Class B with Restaurant: An owner occupied dwelling, which is the primary residence of the owner and where a portion of the dwelling is available for short-term lodging and where receptions or other similar private functions may be held. Meals may be served to lodgers, guests of receptions and other private functions and the general public as follows: A Bed and Breakfast Inn, Class B with Restaurant may engage in the preparation and retail sale of food and beverages, including the sale of alcoholic beverages. Customers are served their food, or beverages by a restaurant employee at the same table at which said items are consumed. Advertising on local billboards is prohibited. The prohibition will not preclude, however, mailings or advertisements in newspapers and in national, regional, state or local travel and tourism periodicals.

¶8.     The second amendment governed the use permits associated with the new "Bed and Breakfast Inn Class B with Restaurants."

> Section 602.02.03: Uses Which May be Permitted as Use Permits:
>
> Class B Bed and Breakfast Inn with Restaurant. It is expressly understood that a separate Use Permit is required to operate a restaurant in a Class B Bed and

4

Breakfast Inn. *Any existing Class B Bed and Breakfast Inns who determine that they wish to operate a restaurant in conjunction with their Class B Bed and Breakfast Inn is* [sic] *permitted to do so by right* subject to receipt of a statement indicating this election.

(Emphasis added.) Because the Fairview Inn was the only Class B bed and breakfast in the city, this amendment effectively exempted the Inn from having to obtain a new use permit in order to operate a restaurant.

¶9. On January 28, 2004, the City Council brought the two proposed amendments to the zoning ordinance before the Jackson City Planning Board. After a full hearing, the planning board issued a "negative recommendation" to the City Council.

¶10. Despite the negative recommendation, on April 7, 2004, the Jackson City Council held a public hearing on the amendments. Five council members were present: Dr. Leslie Burl McLemore, Margaret Barrett-Simon, Bettye Dagner-Cook, Bo Brown, and Ben Allen. The lawyers for each side were given ten minutes each to present their arguments to the council, and the council heard public comments for and against the amendments.

¶11. The attorney for the Fairview Inn argued that a restaurant was needed to provide the Inn another source of revenue. He noted that the property would remain in a residential zone and argued that the Inn had sufficient parking to handle any additional traffic. The attorney submitted a written statement by the Fairview Inn which claimed that "[t]he proposal would simply give Fairview the right to choose to advertise its existing fine dining offering directly (offered presently under its authority to serve meals to 'social gatherings') as a 'restaurant', and without the limitation of day-ahead reservations." Among the documents attached to the statement were pictures and plot plans of the Inn's property, copies of the Inn's leases of off-

5

street parking facilities, letters and petitions in support of the amendments, and the 1993 permanent use permit.

¶12. Mr. Baker spoke as the attorney for the opponents. He argued that the amendments would effectively rezone the Inn from residential to commercial. Mr. Baker contended that a restaurant was not compatible with the residential character of the neighborhood, that it would be damaging to the surrounding property owners, that it would create a hazard to the children living in the area, that it was not in harmony with the City's comprehensive plan, and that it would increase traffic in the area. Mr. Baker also submitted a written statement along with a map of the area, signatures of other homeowners in the area who opposed the amendments, photographs depicting traffic and parking problems on Fairview Street, ads for the Inn, and the transcript of the planning board hearing.

¶13. At the close of the arguments and public comment, the city council unanimously voted 5-0 to adopt the proposed amendments. Aggrieved, the Bakers and the Modak-Trurans appealed to the Circuit Court of the First Judicial District of Hinds County. The trial judge appointed Lee Turner as a special master for the case. Special Master Turner filed a report and recommendation, finding that the amendments amounted to illegal spot zoning. Circuit Judge Bobby Delaughter rejected the special master's recommendation and affirmed the city council's adoption of the amendments. From this decision, the Bakers and the Modak-Trurans appeal to this Court.

### Issues

¶14. The Bakers and Modak-Trurans raise various issues about the propriety of the amendments. They argue that the city council's decision to amend the zoning ordinance (1)

6

constituted illegal rezoning; (2) resulted in illegal "spot zoning"; (3) violated their due process rights; (4) was arbitrary and capricious; and (5) that the amendments are unconstitutionally vague.

**Standard of Review**

¶15.    A zoning decision will be upheld on appeal unless it is "arbitrary, capricious, discriminatory, or is illegal or without a substantial evidentiary basis." *Town of Florence v. Sea Lands, Ltd.*, 759 So. 2d 1221, 1223 (quoting *Faircloth v. Lyles*, 592 So. 2d 941, 943 (Miss. 1991)). "There is a presumption of validity of a governing body's enactment or amendment of a zoning ordinance and the burden of proof is on the party asserting its invalidity." *Perez v. Garden Isle Cmty. Ass'n*, 882 So. 2d 217, 219 (Miss. 2004) (quoting *Carpenter v. City of Petal,* 699 So. 2d 928, 932 (Miss. 1997)).

¶16.    An example of an arbitrary or discriminatory zoning decision is "spot zoning." In the present case, the special master determined that the amendments to the zoning ordinance were invalid because they resulted in impermissible spot zoning. Spot zoning is defined as "a small island of relatively intense use surrounded by a sea of less intense use." 2 E.C. Yokley, Zoning Law and Practice § 13-2 (4th ed. 2000). The term has been used to describe a zoning ordinance which is amended to "reclassify[] one or more tracts or lots for a use prohibited by the original zoning ordinance and out of harmony therewith." *Drews v. City of Hattiesburg*, 904 So. 2d 138, 141 (Miss. 2005) (quoting *McWaters v. City of Biloxi*, 591 So. 2d 824, 828 (Miss. 1991)).

¶17.    Whether an action will be void for impermissible spot zoning is determined by the particular circumstances of each case. *Id.* Spot zoning has been held to be invalid "when it

7

is primarily for the private interest of the owner of the property affected, and not related to the general plan for the community as a whole." 2 Yokley, *supra* § 13-3. In other words, a zoning amendment which favors a particular landowner over adjacent landowners will be viewed as an arbitrary and discriminatory use of zoning authority unless there is "substantial evidence of change in the neighborhood in order to justify the rezoning of a small tract as an amendment in keeping with the comprehensive plan." *Id.* at § 13-4.

¶18. The City of Jackson insists that the amendments in question are pure "text amendments" and not a rezoning. The circuit judge agreed, reasoning that "[t]he text amendments do not make any changes to the City's zoning map," and that the area would maintain its R-2 zoning classification. He also concluded that the amendments "simply modify a 'use' definition," and that they would not "open the proverbial floodgates unleashing commercial development." Yet, the labeling of an action as a "text amendment" does not make it so if the City's actions effectively rezone a residential plot for commercial use. This Court has recognized that the name given a municipal act does not dictate its nature. *See* **Luter v. Oakhurst Assocs., Ltd.**, 529 So. 2d 889, 893 (Miss. 1988) (holding that a "resolution" was in fact an ordinance).

¶19. In an analogous case, **Drews v. City of Hattiesburg**, 904 So. 2d 138 (Miss. 2005), this Court struck down the Hattiesburg City Council's grant of several zoning variances as illegal spot zoning, rejecting the city's argument that the variances did not constitute a rezoning. In **Drews**, the city granted a development company six variances to the city's zoning ordinance on a lot zoned B-1. **Id.** at 140. The variances would have allowed an increase in building height from 35 to 45 feet and an increase in the size of a building from 10,000 to

8

60,000 square feet. *Id.* This Court reversed and rendered the circuit court's judgment affirming the variances, concluding that illegal spot zoning had occurred. The *Drews* opinion noted that "serious questions arise when a variance is granted to permit a use otherwise prohibited by the ordinance; e.g., a service station or quick-stop grocery in a residential district. The most obvious danger is that the variance will be utilized to by-pass procedural safeguards required for valid amendment." *Id.* at 141 (quoting Robert C. Khayat & David L. Reynolds, *Zoning Law in Mississippi*, 45 Miss. L.J. 365, 383 (1974)). According to this Court, "it [was] clear that the City of Hattiesburg ha[d] attempted to bypass the safeguards provided by the rezoning process," because the changes were "so dramatic that they consitute[d] a rezoning to B-3, two levels beyond the B-1 (professional business district) lots in question." *Id.* at 141-42.

¶20. Similarly, in the present case, the amendments allow the Fairview Inn to conduct highly commercial operations within an area restricted to one- and two-family dwellings. Before the amendments, the only use permits allowed in R-2 zones were for limited purposes such as schools, churches, and group homes. Zoning Ordinance § 602.02.3. However, with the addition of "Class B Bed and Breakfast with Restaurant," the Fairview Inn was granted permission to operate a general restaurant within an R-2 zone, an activity allowed in areas zoned C-3 commercial districts. In addition, by allowing existing Class B bed and breakfast inns to operate restaurants "as of right," the amendments exempted the Fairview Inn from having to apply for a use permit. The special master correctly determined that the amendments significantly altered and expanded the activities previously allowed on R-2 properties, and effectively rezoned the Fairview Inn from residential to commercial property.

9

As in **Drews**, the amendments effectively circumvent the stringent procedural requirements for rezoning.

¶21.    Moreover, the City does not dispute that the only business affected by the amendments was the Fairview Inn. Indeed, the entire debate was focused on the Inn and its activities. There can be no dispute that the amendment was designed to favor the Inn, and such preferential treatment constitutes illegal spot zoning because the City has not demonstrated "substantial evidence of change in the neighborhood in order to justify the rezoning of a small tract as an amendment in keeping with the comprehensive plan." 2 Yokley, *supra* § 13-4. Regarding evidence of change, the circuit court observed "there is no such evidence whatever."

*Attorneys' Fees.*

¶22.    The Modak-Trurans also ask this Court to remand the case for an award of attorneys' fees and costs in connection with their claim under Section 1983 of Title 42 of the United States Code. The City asserts that the Modak-Trurans never filed a Section 1983 action, but the original complaint clearly requests relief under this federal statute. However, neither the special master nor the circuit judge ever addressed this issue, and they were never asked to do so, by motion or otherwise. Moreover, no proof was adduced on this subject.

¶23.    Although the special master found that the City's actions constituted illegal spot zoning, he never addressed the Modak-Trurans' Section 1983 claim. When the City objected to the special master's report and asked for a hearing on the matter, the Modak-Trurans did not ask the circuit court to consider their federal claim or request a hearing for a determination of reasonable attorneys' fees and costs. Instead, the Modak-Trurans requested

10

that the trial court accept the special master's report without a hearing. The record is simply devoid of any proof of the Modak-Trurans' fees or expenses. By failing to request such relief from the circuit court and by failing to submit any proof of their attorneys' fees or expenses, the Modak-Trurans have abandoned and waived their Section 1983 claims, and this Court should not address the issue. *See, e.g., Lamb Constr. Co. v. Renova*, 573 So. 2d 1378, 1384 (Miss. 1990) (finding cross-appeal for attorneys' fees and costs without merit where there was no evidence of such expenses in the record).

## Conclusion

¶24. Although the City proceeded under the auspices of a "text amendment," the changes to the zoning ordinance effectively rezoned residential property for the sole favor and benefit of the Fairview Inn. Such action constitutes impermissible spot zoning. Therefore, we reverse the circuit court's judgment affirming the amendments and render judgment in favor of the appellants.

¶25. **REVERSED AND RENDERED.**

**WALLER, C.J., GRAVES, P.J., DICKINSON, RANDOLPH AND PIERCE, JJ., CONCUR. CARLSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR AND CHANDLER, JJ.**

**CARLSON, PRESIDING JUSTICE, DISSENTING:**

¶26. I respectfully disagree with the majority's decision to reverse and render the circuit court's judgment affirming the Jackson City Council's adoption of amendments to the City's zoning ordinances. The City Council's decision was neither arbitrary, capricious, discriminatory, nor illegal, and was supported by substantial evidence. *See Town of*

11

*Florence v. Sea Lands, Ltd.*, 759 So. 2d 1221, 1223 (Miss. 2000) (quoting *Faircloth v. Lyles*, 592 So. 2d 941, 943 (Miss. 1991)). I do not find the adopted text amendments allowing the Fairview Inn (Inn) to operate as a restaurant to be an instance of illegal spot zoning. Furthermore, I find that the trial judge's findings of fact contained in his memorandum opinion and order are supported by substantial evidence contained in the record. Stated differently, I find that the trial judge's affirmance of the City Council's decision was proper inasmuch as the City Council's decision was supported by substantial evidence and thus beyond our authority to disturb on appeal.

¶27. In his fourteen-page Memorandum Opinion and Order, the circuit judge stated, *inter alia*:

> It is clear that Belhaven was, *and remains*, zoned R-2. Fairview Inn is located on the outskirts of Belhaven, near the corner of Fairview Street and North State Street. The owners, in fact, lease a parking lot from Baptist Health Systems adjacent to the latter's commercial building situated at 1600 North State Street (at the corner of Fairview Street) and part of the North State Street commercial corridor. The parking lot abuts the Fairview property and connects with the bed-and-breakfast via a gate and steps (R. 229, 253-63). According to Fairview, this significantly diminishes the amount of traffic going and coming on Fairview Street, as short as that distance is from North State Street, and entering the neighborhood (R. 58-60). Moreover, as pointed out by Fairview's attorney, because of the decline in high-volume business, such as weddings and receptions, Fairview's shift to serving fifty or less patrons at a time as a restaurant would diminish, rather than increase, parking, traffic, and other concerns [as expressed by the appellants].
>
> Mr. Modak-Truran, one of the appellants herein, and who lives across the street from the Fairview Inn, informed the Council of the problems he and his wife had already experienced with semi-trailer trucks unloading on the street in front of their house. He produced photographs showing cars of patrons lining both sides of Fairview Street, stating, 'Parking is definitely a problem in the day.' (R. 127). Mr. Dan Baker shared similar information. These were all problems encountered *before* the passage of the amendments.

12

> With respect to increased traffic concerns, Councilwoman Margaret Barrett-Simon observed that tour buses were already intruding upon that part of Belhaven in which the Eudora Welty House Museum was located (R. 133). Resident Don Ketner, who also is a lawyer along with his wife, Claire, told the Council that in his opinion 'the Fairview is the crown jewel of Belhaven neighborhood.' He stated there would not be any changes to the property which is 'very compatible with the street where my family lives.' Mr. Ketner went on to say that, in his opinion, the presence of the restaurant would increase his property's value (R. 79-80).

Circuit Judge's Memorandum Opinion and Order, pp. 11-12 (emphasis in original).

¶28.    As found by the circuit judge, the Fairview Inn is located on the outskirts of historic Belhaven near the corner of Fairview Street and North State Street. The Baptist Health Systems (BHS) has a building located at 1600 North Street. The BHS building is located immediately to the west of the Inn, which leases an adjacent parking lot from BHS for patron parking. This parking lot diminishes the traffic flow on Fairview Street by virtue of the fact that Inn patrons may enter from North State Street, park in the BHS parking lot adjacent to the Inn property, and then gain access to the Inn property and the Inn itself by walking through a gate and up several steps. The Inn restaurant services fifty or less patrons at a time, which is significantly less traffic than that associated with a special event, such as a wedding or reception.[1]

¶29.    Likewise, as noted by the circuit judge, the testimony of two of the appellants, Mark Modak-Truran and Dan Baker, before the Council, revealed that problems with semi-trailer trucks unloading on Fairview Street and patrons parking on Fairview Street during the

---

[1]The Fairview Inn advertises that it accommodates up to 800 guests at a private event, such as a reception.
http://www.fairviewinn.com/jackson-mississippi-wedding-facility.htm (last visited August 11, 2009).

13

daytime hours were evident *before* any of the text amendments were adopted and before Fairview Inn was operating as a restaurant open to the public. City Councilwoman Margaret Barrett-Simon noted at the hearing before the City Council that, prior to the Inn's operation as a public restaurant, Fairview Street already was receiving substantial traffic based on tour buses traveling to the Eudora Welty home in the Belhaven area. Also, another resident, Don Ketner, testified before the City Council that the Fairview Inn was "the crown jewel of Belhaven." He opined that the addition of the restaurant at the Inn would be compatible with the scheme of the street and perhaps even increase his property value.

¶30.    Decisions of municipal zoning authorities, as legislative decisions, have a presumption of validity. "A comprehensive zoning ordinance adopted by a city is presumed to be 'well planned and adopted to be permanent.'" *McWaters v. City of Biloxi*, 591 So. 2d 824, 827 (Miss. 1991) (quoting *Woodland Hills Conservation Ass'n, Inc. v. City of Jackson*, 443 So. 2d 1173, 1180 (Miss.1983)).   The majority finds in today's case that the City Council's action amounted to illegal spot zoning.  As the majority aptly states, "spot zoning" is a zoning amendment which is not in harmony with the comprehensive or well-considered land use plan of a municipality. *Drews v. City of Hattiesburg*,  904 So. 2d 138, 141 (Miss. 2005) (citing *McWaters,* 591 So. 2d at 828).

¶31.    This Court has stated, "We are of  the opinion that although a zoning ordinance or amendment creates in the center of a large zone a small area or a district devoted to a different use, it is not spot zoning if it is enacted in accordance with a comprehensive zoning plan." *Ridgewood Land Co. v. Simmons*, 243 Miss. 236, 252, 137 So. 2d 532, 538 (1962). In my opinion, such is the case at hand.  The change in use of the Fairview Inn property from

14

a facility open for weddings and receptions and for lodgers to a facility with a dining room open to the general public does not constitute an alteration that is in disharmony with the surrounding historic residential area.

¶32.    Unlike the majority, I do not find ***Drews v. City of Hattiesburg***, 904 So. 2d 138 (Miss. 2005), to be analogous to the case *sub judice*.  In ***Drews***, the City of Hattiesburg granted six variances to the city's zoning ordinance to Lee Medical Development, LLC, for  a lot zoned B-1, professional business district.  ***Id.*** at 140.  Two of the variances would have allowed for an increase in building height from thirty-five to forty-five feet and an increase in the size of a building from 10,000 to 60,000 square feet.  ***Id.***  These variances in height and square footage previously had been denied by the Hattiesburg Board of Adjustments.  ***Id.*** This Court held that the proposed variances were "so dramatic that they constitute[d] a rezoning to B-3, two levels beyond the B-1 (professional business district) lots in question."  ***Id.*** at 141. This Court rejected the premise that these proposed changes were  minor departures from the scope and intent of the professional business district classification. ***Id***. at 142.

¶33.    I am of the firm opinion that the change in use of the Fairview Inn from a special events venue to a restaurant hardly constitutes the type of dramatic physical change as seen in ***Drews***, wherein the proposed variances would have vastly changed the size of the building some 50,000 square feet over the maximum square footage for a property zoned in the professional business district, and would have served to rezone the area two levels above its original B-1 classification.

¶34.    The majority labels the use of the Inn as a restaurant as "highly commercial" in contrast to the surrounding properties and states that the use of the property by the general

15

public removes it from an R-2 classification (one-family and two-family residential zone) and effectively creates a C-3 commercial property within a residential area. Yet the adopted amendments allowing for public dining in addition to private events are not a use-change so substantial as to constitute a rezoning. It simply does not change the character of the property substantially as to create disharmony with the neighboring properties. Substantial evidence shows that the primary objections of the Modak-Trurans and the Bakers (regarding the impact of a restaurant on the safety and traffic flow of Fairview Street) actually would be diminished by the service of fifty or less patrons at one seating versus the hundreds of guests served food and alcohol at wedding receptions.

¶35. I simply cannot find that the opening of a dining service to the public in such small numbers is not in accordance with the comprehensive land-use plan of the municipality, and as such, the City Council's adoption of the amendments should stand. "The Courts should not constitute themselves as a Zoning Board for a municipality." *McWaters v. City of Biloxi*, 591 So. 2d 824, 828 (Miss. 1991) (quoting *Westminster Presbyterian Church v. City of Jackson*, 253 Miss. 495, 176 So. 2d 267, 272 (1965)). This Court further stated in *Barnes v. Board of Supervisors, DeSoto County*, 553 So. 2d 508 (Miss. 1989), "[w]hatever may be the personal opinion of the judges of an appeal court on zoning, the court cannot substitute its own judgment as to the wisdom or soundness of the municipality's action." *Id.* at 510 (citing *Moore v. Madison County Bd. of Supervisors*, 227 So. 2d 862 (Miss. 1969)).

¶36. Additionally, the procedural history of this case is strong evidence that this is a fairly debatable issue. As the majority recounts, the City's zoning administrator first notified the Fairview Inn in a September 22, 2003, letter that it could not operate as a restaurant under

16

the Class B Bed and Breakfast classification. After meeting with the Inn's owners, the zoning administrator wrote to the Inn again to advise that it was not violating the terms of the zoning ordinance by operating the restaurant on a reservation-only basis. The attorney for the Fairview Inn discussed proposed changes to the zoning ordinance that would allow for service to the general public without prior reservations. On January 28, 2004, the City Council brought before the Jackson City Planning Board proposed text amendments that would make operating a restaurant open to the general public a permissible use of a Class B Bed and Breakfast. Following a hearing on the matter, the Planning Board issued a negative recommendation to the City Council as to adopting these proposed changes. After a public hearing before the Jackson City Council, the Council disagreed with the Planning Board and voted unanimously (5-0) to adopt the Class B Bed and Breakfast Inn with Restaurant amendments. The Modak-Trurans and the Bakers appealed to circuit court, and the trial judge appointed a special master, who issued a report and recommendation to the circuit judge, finding that the City Council's actions amounted to illegal spot zoning. The circuit judge rejected his duly-appointed special master's report and recommendation and affirmed the City's Council's adoption of the zoning amendments. Thus, in my opinion, the aforementioned procedural history of this case is the epitome of "fairly debatable."

¶37. Where the point at issue is "fairly debatable," we will not disturb the zoning authority's action. *Drews v. City of Hattiesburg,* 904 So. 2d 138, 140 (Miss. 2005) (citing *Perez v. Garden Isle Cmty. Ass'n*, 882 So. 2d 217, 219 (Miss. 2004); *Carpenter v. City of Petal*, 699 So. 2d 928, 932 (Miss. 1997)). "That which is '[f]airly debatable' is the antithesis of arbitrary and capricious." *Limbert v. Miss. Univ. for Women Alumnae Ass'n, Inc*. 998

So. 2d 993, 1002 (Miss. 2008) (quoting *Town of Florence v. Sea Lands, Ltd.*, 759 So. 2d 1221, 1223 (Miss. 2000); *Saunders v. City of Jackson*, 511 So. 2d 902, 906 (Miss. 1987)).

¶38.    For all the reasons stated, I would affirm the circuit court's affirmance of the City's Council's adoption of the zoning amendments in this case.  Because the majority finds otherwise, I must respectfully dissent.

**LAMAR AND CHANDLER, JJ., JOIN THIS OPINION.**