CARLSON, Presiding Justice,
Dissenting:
¶ 26. I respectfully disagree with the majority’s decision to reverse and render the circuit court’s judgment affirming the Jackson City Council’s adoption of amendments to the City’s zoning ordinances. The City Council’s decision was neither arbitrary, capricious, discriminatory, nor illegal, and was supported by substantial evidence. See Town of Florence v. Sea Lands, Ltd., 759 So.2d 1221, 1223 (Miss.2000) (quoting Faircloth v. Lyles, 592 So.2d 941, 943 (Miss.1991)). I do not find the adopted text amendments allowing the Fairview Inn (Inn) to operate as a restaurant to be an instance of illegal spot zoning. Furthermore, I find that the trial judge’s findings of fact contained in his memorandum opinion and order are supported by substantial evidence contained in the record. Stated differently, I find that the trial judge’s affirmance of the City Council’s decision was proper inasmuch as the City Council’s decision was supported by substantial evidence and thus beyond our authority to disturb on appeal.
¶ 27. In his fourteen-page Memorandum Opinion and Order, the circuit judge stated, inter alia:
It is clear that Belhaven was, and remains, zoned R-2. Fairview Inn is located on the outskirts of Belhaven, near the corner of Fairview Street and North State Street. The owners, in fact, lease a parking lot from Baptist Health Systems adjacent to the latter’s commercial building situated at 1600 North State Street (at the corner of Fairview Street) and part of the North State Street commercial corridor. The parking lot abuts the Fairview property and connects with the bed-and-breakfast via a gate and steps (R. 229, 253-63). According to Fairview, this significantly diminishes the amount of traffic going and coming on Fairview Street, as short as that distance is from North State Street, and entering the neighborhood (R. 58-60). Moreover, as pointed out by Fairview’s attorney, because of the decline in high-volume business, such as weddings and receptions, Fairview’s shift to serving fifty or less patrons at a time as a restaurant would diminish, rather than increase, parking, traffic, and other concerns [as expressed by the appellants].
Mr. Modak-Truran, one of the appellants herein, and who lives across the street from the Fairview Inn, informed the Council of the problems he and his wife had already experienced with semitrailer trucks unloading on the street in front of their house. He produced photographs showing cars of patrons lining both sides of Fairview Street, stating, “Parking is definitely a problem in the day.” (R. 127). Mr. Dan Baker shared similar information. These were all problems encountered before the passage of the amendments.
With respect to increased traffic concerns, Couneilwoman Margaret Barrett-Simon observed that tour buses were already intruding upon that part of Bel-haven in which the Eudora Welty House Museum was located (R. 133). Resident Don Ketner, who also is a lawyer along with his wife, Claire, told the Council that in his opinion “the Fairview is the crown jewel of Belhaven neighborhood.” He stated there would not be any changes to the property which is “very compatible with the street where my family lives.” Mr. Ketner went on to say that, in his opinion, the presence of *213 the restaurant would increase his property’s value (R. 79-80).
Circuit Judge’s Memorandum Opinion and Order, pp. 11-12 (emphasis in original).
¶ 28. As found by the circuit judge, the Fairview Inn is located on the outskirts of historic Belhaven near the corner of Fair-view Street and North State Street. The Baptist Health Systems (BHS) has a building located at 1600 North Street. The BHS building is located immediately to the west of the Inn, which leases an adjacent parking lot from BHS for patron parking. This parking lot diminishes the traffic flow on Fairview Street by virtue of the fact that Inn patrons may enter from North State Street, park in the BHS parking lot adjacent to the Inn property, and then gain access to the Inn property and the Inn itself by walking through a gate and up several steps. The Inn restaurant services fifty or less patrons at a time, which is significantly less traffic than that associated with a special event, such as a wedding or reception.[1]
¶ 29. Likewise, as noted by the circuit judge, the testimony of two of the appellants, Mark Modak-Truran and Dan Baker, before the Council, revealed that problems with semi-trailer trucks unloading on Fairview Street and patrons parking on Fairview Street during the daytime hours were evident before any of the text amendments were adopted and before Fairview Inn was operating as a restaurant open to the public. City Councilwoman Margaret Barrett-Simon noted at the hearing before the City Council that, prior to the Inn’s operation as a public restaurant, Fairview Street already was receiving substantial traffic based on tour buses traveling to the Eudora Welty home in the Belhaven area. Also, another resident, Don Ketner, testified before the City Council that the Fair-view Inn was “the crown jewel of Belha-ven.” He opined that the addition of the restaurant at the Inn would be compatible with the scheme of the street and perhaps even increase his property value.
¶ 30. Decisions of municipal zoning authorities, as legislative decisions, have a presumption of validity. “A comprehensive zoning ordinance adopted by a city is presumed to be ‘well planned and adopted to be permanent.’” McWaters v. City of Biloxi, 591 So.2d 824, 827 (Miss.1991) (quoting Woodland Hills Conservation, Ass’n, Inc. v. City of Jackson, 443 So.2d 1173, 1180 (Miss.1983)). The majority finds in today’s case that the City Council’s action amounted to illegal spot zoning. As the majority aptly states, “spot zoning” is a zoning amendment which is not in harmony with the comprehensive or well-considered land use plan of a municipality. Drews v. City of Hattiesburg, 904 So.2d 138, 141 (Miss.2005) (citing McWaters, 591 So.2d at 828).
¶ 31. This Court has stated, “We are of the opinion that although a zoning ordinance or amendment creates in the center of a large zone a small area or a district devoted to a different use, it is not spot zoning if it is enacted in accordance with a comprehensive zoning plan.” Ridgewood Land Co. v. Simmons, 243 Miss. 236, 252, 137 So.2d 532, 538 (1962). In my opinion, such is the case at hand. The change in use of the Fairview Inn property from a facility open for weddings and receptions and for lodgers to a facility with a dining room open to the general public does not constitute an alteration that is in disharmony with the surrounding historic residential area.
*214 ¶ 32. Unlike the majority, I do not find Drews v. City of Hattiesburg, 904 So.2d 138 (Miss.2005), to be analogous to the case sub judice. In Drews, the City of Hattiesburg granted six variances to the city’s zoning ordinance to Lee Medical Development, LLC, for a lot zoned B-l, professional business district. Id. at 140. Two of the variances would have allowed for an increase in building height from thirty-five to forty-five feet and an increase in the size of a building from 10,000 to 60,000 square feet. Id. These variances in height and square footage previously had been denied by the Hattiesburg Board of Adjustments. Id. This Court held that the proposed variances were “so dramatic that they constitute^] a rezoning to B-3, two levels beyond the B-l (professional business district) lots in question.” Id. at 141. This Court rejected the premise that these proposed changes were minor departures from the scope and intent of the professional business district classification. Id. at 142.
¶ 33. I am of the firm opinion that the change in use of the Fairview Inn from a special events venue to a restaurant hardly constitutes the type of dramatic physical change as seen in Drews, wherein the proposed variances would have vastly changed the size of the building some 50,000 square feet over the maximum square footage for a property zoned in the professional business district, and would have served to rezone the area two levels above its original B-l classification.
¶ 34. The majority labels the use of the Inn as a restaurant as “highly commercial” in contrast to the surrounding properties and states that the use of the property by the general public removes it from an R-2 classification (one-family and two-family residential zone) and effectively creates a C-3 commercial property within a residential area. Yet the adopted amendments allowing for public dining in addition to private events are not a use-change so substantial as to constitute a rezoning. It simply does not change the character of the property substantially as to create disharmony with the neighboring properties. Substantial evidence shows that the primary objections of the Modak-Trurans and the Bakers (regarding the impact of a restaurant on the safety and traffic flow of Fairview Street) actually would be diminished by the service of fifty or less patrons at one seating versus the hundreds of guests served food and alcohol at wedding receptions.
¶ 35. I simply cannot find that the opening of a dining service to the public in such small numbers is not in accordance with the comprehensive land-use plan of the municipality, and as such, the City Council’s adoption of the amendments should stand. “The Courts should not constitute themselves as a Zoning Board for a municipality.” McWaters v. City of Biloxi, 591 So.2d 824, 828 (Miss.1991) (quoting Westminster Presbyterian Church v. City of Jackson, 253 Miss. 495, 176 So.2d 267, 272 (1965)). This Court further stated in Barnes v. Board of Supervisors, DeSoto County, 553 So.2d 508 (Miss.1989), “[wjhatever may be the personal opinion of the judges of an appeal court on zoning, the court cannot substitute its own judgment as to the wisdom or soundness of the municipality’s action.” Id. at 510 (citing Moore v. Madison County Bd. of Supervisors, 227 So.2d 862 (Miss.1969)).
¶ 36. Additionally, the procedural history of this case is strong evidence that this is a fairly debatable issue. As the majority recounts, the City’s zoning administrator first notified the Fairview Inn in a September 22, 2003, letter that it could not operate as a restaurant under the Class B Bed and Breakfast classification. After meeting with the Inn’s owners, the *215 zoning administrator wrote to the Inn again to advise that it was not violating the terms of the zoning ordinance by operating the restaurant on a reservation-only basis. The attorney for the Fairview Inn discussed proposed changes to the zoning ordinance that would allow for service to the general public without prior reservations. On January 28, 2004, the City Council brought before the Jackson City Planning Board proposed text amendments that would make operating a restaurant open to the general public a permissible use of a Class B Bed and Breakfast. Following a hearing on the matter, the Planning Board issued a negative recommendation to the City Council as to adopting these proposed changes. After a public hearing before the Jackson City Council, the Council disagreed with the Planning Board and voted unanimously (5-0) to adopt the Class B Bed and Breakfast Inn with Restaurant amendments. The Modak-Trurans and the Bakers appealed to circuit court, and the trial judge appointed a special master, who issued a report and recommendation to the circuit judge, finding that the City Council’s actions amounted to illegal spot zoning. The circuit judge rejected his duly-appointed special master’s report and recommendation and affirmed the City’s Council’s adoption of the zoning amendments. Thus, in my opinion, the aforementioned procedural history of this case is the epitome of “fairly debatable.”
¶ 37. Where the point at issue is “fairly debatable,” we will not disturb the zoning authority’s action. Drews v. City of Hattiesburg, 904 So.2d 138, 140 (Miss.2005) (citing Perez v. Garden Isle Cmty. Ass’n, 882 So.2d 217, 219 (Miss.2004); Carpenter v. City of Petal, 699 So.2d 928, 932 (Miss.1997)). “That which is ‘[fjairly debatable’ is the antithesis of arbitrary and capricious.” Limbert v. Miss. Univ. for Women Alumnae Ass’n, Inc. 998 So.2d 993, 1002 (Miss.2008) (quoting Town of Florence v. Sea Lands, Ltd., 759 So.2d 1221, 1223 (Miss.2000); Saunders v. City of Jackson, 511 So.2d 902, 906 (Miss.1987)).
¶ 38. For all the reasons stated, I would affirm the circuit court’s affirmance of the City’s Council’s adoption of the zoning amendments in this case. Because the majority finds otherwise, I must respectfully dissent.
LAMAR AND CHANDLER, JJ., JOIN THIS OPINION.

. The Fairview Inn advertises that it accommodates up to 800 guests at a private event, such as a reception. http://www.fairviewinn. com/jackson-mississippi-wedding-facility.hlm (last visited August 11, 2009).