387 So.2d 736 (1980)
CLOVERLEAF MALL, LTD. et al.
v.
D.B. CONERLY et al.
No. 52065.
Supreme Court of Mississippi.
September 3, 1980.
*737 Currie & Currie, Overton A. Currie, Samuel E. Farris, Pope & Van Slyke, J.B. Van Slyke, Jr., George G. Currie, Hattiesburg, for appellants.
Heidelberg, Sutherland & McKenzie, R.W. Heidelberg, Gray, Montague & Pittman, R.A. Gray, III, Wallace R. Gunn, Hattiesburg, for appellees.
Before SMITH, SUGG and COFER, JJ.
SUGG, Justice, for the Court:
Cloverleaf Mall, Ltd., a limited partnership, and Mrs. Terry Anderson Currie, Edward Alexander Currie, Jr., Overton A. Currie and Daniel McMahon Currie filed a petition to rezone 10.6 acres of land from R-1, single family residential, to C-2 general commercial. Petitioners alleged that Cloverleaf Mall had a leasehold interest in the land which was owned by the individuals *738 named above. A petition opposing the requested rezoning was filed by protestants who reside in the residential area immediately north of the property sought to be rezoned.
Following a hearing, the City Planning Commission made its written recommendation on April 11, 1978 to the Mayor and Commissioners that rezoning be granted if petitioners would agree to restrictions for protection of the residential neighborhood. The recommended restrictions were: (1) Owners to place a residential protective covenant on lands between Cloverleaf Mall and the residential area adjoining the mall on the north. (2) Petitioners should properly landscape and maintain visual and sound protection on the northern and western boundaries of the mall property to be rezoned. In addition the Planning Commission recommended that the city request petitioners to give serious consideration to proper landscaping and maintenance of neutral zones of existing and proposed parking lots within the mall and that the City request petitioners to maintain the existing mall area in a better condition. The protestants, being aggrieved at the recommendations of the Planning Commission, filed written requests for a public hearing before the Mayor and Commissioners. The hearings were held on May 30, 1978, the rezoning petition was taken under advisement, and Ordinance No. 1948 rezoning the property was adopted on August 9, 1978.
The protestants perfected an appeal to the Circuit Court of Forrest County which entered an order reversing the Mayor and Commissioners, held Ordinance No. 1948 was invalid, and ordered the property be reclassified to its original R-1, single family residential classification. The circuit court held:
The petitioners have the burden of proving a substantial change of conditions and public need for rezoning. Material to this examination are new or additional facts which have occurred since original zoning. The record clearly shows no change in the character of the neighborhood from R-1 Single-Family Residential. Further development and use of property according to existing zoning classification is not sufficient to support rezoning. The findings of the municipality that merely "parrot" legal requirements not supported by facts are not binding on the courts. The petitioners failed to meet the burden of proof necessary for zoning change. Absent this proof, the Court must assume the original zoning is valid and permanent.
Rezoning subject to "... conditions, stipulations, and covenants in April 11, 1978, Planning Commission recommendation ..." is illegal. "Contract zoning" is an unconstitutional bargaining away of municipal police power. Zoning is an exercise of the police power to serve the common good and general welfare. It is elementary that this legislative function may not be surrendered or curtailed by bargain or its exercise controlled by the considerations in the law of contract.
The record also reflects that the rezoning ordinance was the product of a meeting convened after adjournment of the regular public meeting. By statute and city ordinance "public business" is to be performed in an "open and public manner" in "open meetings." Specifically, "all ordinances shall be read and considered ... at a public meeting of the governing authorities ..."
Based on the record the rezoning was arbitrary, capricious, discriminatory, and abuse of discretion, and illegal.
We hold that the circuit court was correct in finding that petitioners failed to prove a sufficient change of conditions and a public need for rezoning of the 10.6 acres; therefore, it is not necessary for us to consider whether the rezoning constituted contract zoning or whether the rezoning ordinance was adopted at a meeting convened after adjournment of the regular public meeting.
In order to put the issues involved in this case in proper perspective, it is necessary to review the history of the zoning of the property located north of and adjacent to the cloverleaf intersection of U.S. Highways *739 49 and 11 in the City of Hattiesburg. Five cases involving the individual petitioners' land north of the intersection and one case involving petitioners' land west of the intersection were consolidated and disposed of in Currie v. Ryan, 243 So.2d 48 (Miss. 1971). The land of the petitioners lying north of the cloverleaf was called "Currie North" in Currie v. Ryan, supra, and consisted of approximately 55 acres between 17th Avenue on the east, Highway 49 on the west, the cloverleaf on the south and, for the most part, Fuller Street on the north. When the first petition (No. 45,982) was filed, that portion of Currie North located north of McInnis Street was an unoccupied pine forest and contained several platted but unopened streets. These streets, from the cloverleaf to the north, were: McInnis Street, Eddy Street, Arcadia Street, Frisco Street and Fuller Street. That part of the Currie North lands lying south of McInnis Street had been zoned commercial and the remainder of the tract, comprising all land north of McInnis Street, had been zoned residential.
The first case, No. 45,982, considered in Currie v. Ryan, supra, was commenced in 1967 by petitioners who sought commercial zoning from McInnis Street on the south to Frisco Street on the north. The City Council granted commercial zoning on May 17, 1967 as far north as Eddy Street but declined to extend the commercial zoning to Frisco Street.
The second case, No. 45,983, was filed two days before the action of the City Council on the petition involved in No. 45,982. The City Council dismissed the petition and the action of the Council was affirmed by the Circuit Court of Forrest County May 21, 1969.
In 1967 the City of Hattiesburg began considering a new comprehensive zoning ordinance and held various public hearings before Ordinance No. 1614 was adopted on November 15, 1967 which extended the commercial zone north to Eddy Street.
In cases numbered 45,981 and 45,985 petitioners appealed from the adoption of the new comprehensive zoning ordinance, No. 1614, which retained the commercial zone at Eddy Street.
The fifth case, No. 46,125, was commenced by petition filed on December 12, 1968 requesting rezoning of the land from Eddy Street on the south to Arcadia Street on the north from residential to commercial. The City Council granted the petition and extended the commercial zoning as far north as Arcadia Street. The protestants appealed to the circuit court which reversed the City Council and all five cases were then appealed to this Court. In Currie v. Ryan, supra, this Court upheld the City Council in granting the rezoning between Eddy Street and Arcadia Street in No. 46,125 and dismissed Nos. 45,982, 45,983, 45,981 and 45,985 as being moot because of the decision reached in No. 46,125. The decision in Currie v. Ryan, supra, upheld the extension of the commercial zone north to Arcadia Street giving the petitioners a 34 acre commercial site for the shopping center known as Cloverleaf Mail.
The other case considered in Currie v. Ryan, supra, was No. 45,984 and dealt with the rezoning of 35 acres of land west of Highway 49 referred to in the opinion as "Currie West." The Curries petitioned the City for rezoning of Currie West from residential to commercial. Protests were filed and the City Council denied the petition for rezoning. Petitioners appealed to the circuit court where the order of the City Council was affirmed, and petitioners appealed to this Court. On appeal, the City of Hattiesburg confessed error in its brief, and in the oral argument, it was announced in open court that the protestants had no objection to rezoning Currie West to Bennett Street on the west. This Court then stated:
There being no opposition to the rezoning of this property to the extent stated, and the City of Hattiesburg having confessed error to such extent, the order of the City Council is vacated and annulled and the matter of rezoning Currie West to Bennett Street is remanded to the City Council for the adoption of a rezoning ordinance with such provisions as the municipal authorities deem appropriate. (243 So.2d at 49)
*740 Currie West was subsequently rezoned commercial and was owned by the Curries at the time the case under consideration was tried. The Currie West land is not involved in the present appeal except for the arguments of protestants that the Currie West land is vacant, unoccupied and available for commercial development, which indicates a lack of public need for further commercial zoning north of the cloverleaf between Highway 49 and 17th Avenue.
Before reviewing the evidence in this case, we restate the requirements set forth in our cases which must be met by one seeking rezoning of property. The courts presume that comprehensive zoning ordinances adopted by municipal authorities are well planned and designed to be permanent. Before property is reclassified from one zone to another, there must be proof either, (1) that there was a mistake in the original zoning or, (2) the character of the neighborhood has changed to such an extent as to justify rezoning and that public need exists for rezoning. Watts v. City of Wiggins, 376 So.2d 1072 (Miss. 1979); Sullivan v. City of Bay St. Louis, 375 So.2d 1200 (Miss. 1979); Jitney Jungle, Inc. v. City of Brookhaven, 311 So.2d 652 (Miss. 1975); Underwood v. City of Jackson, 300 So.2d 442 (Miss. 1974); Patterson v. City of Jackson, 285 So.2d 466 (Miss. 1973); Board of Supervisors of Jackson County v. Roberts, 287 So.2d 436 (Miss. 1973); City of Jackson v. Husbands, 233 So.2d 817 (Miss. 1970); Martinson v. City of Jackson, 215 So.2d 414 (Miss. 1968); Moore v. Madison County Board of Supervisors, 227 So.2d 862 (Miss. 1969); City of Jackson v. Wilson, 195 So.2d 470 (Miss. 1966) and City of Jackson v. Bridges, 243 Miss. 646, 139 So.2d 660 (1962).
Furthermore, an applicant seeking rezoning must prove by clear and convincing evidence either (1) or (2) above. Sullivan v. City of Bay St. Louis, 375 So.2d 1200 (Miss. 1979); Underwood v. City of Jackson, 300 So.2d 442 (Miss. 1974); Hinds County Board of Supervisors v. Covington, 285 So.2d 143 (Miss. 1973).
It is also well established that the use of property in accordance with an original zoning plan is not a material change of conditions which authorizes rezoning. Jitney Jungle, Inc. v. City of Brookhaven, 311 So.2d 652 (Miss. 1975); Martinson v. City of Jackson, 215 So.2d 414 (Miss. 1968).
In this case, petitioners do not contend that there was a mistake in the original zoning. They were then faced with proving by clear and convincing evidence, (1) that the character of the neighborhood had changed to such an extent as to justify rezoning, and (2) that a public need existed for rezoning.
With respect to the first proposition, petitioners' evidence showed extensive commercial development within the Cloverleaf Mall, within the other quadrants of the cloverleaf intersection of U.S. Highways 49 and 11, and along U.S. Highway 11. However, all of the commercial development shown by petitioners was in areas which had been zoned for that purpose. Their evidence merely showed that the property had been developed for commercial uses in accordance with the comprehensive zoning plan and the ordinance rezoning additional property adjacent to the Cloverleaf Mall.
The residential area immediately north of Cloverleaf Mall has remained unchanged since the adoption of the comprehensive zoning ordinance and the ordinance extending the commercial zone north to Arcadia Street. The 10.6 acres involved in this case are owned by the individual petitioners who also own additional property north of the 10.6 acres lying between the existing residential area and the Cloverleaf Mall. The property presently zoned residential located between Cloverleaf Mall and the developed residential area to the north is currently vacant. It cannot be developed as residential property without the consent of the individual petitioners because they own the property.
The evidence of petitioners only shows that the use of the property within the commercial zone in this area was in accordance with the comprehensive zoning plan. Development in accordance with a comprehensive *741 zoning plan is not a material change of conditions which authorizes rezoning. Jitney Jungle, Inc., supra.
Not only were petitioners required to prove changed conditions which would authorize rezoning, but they were also required to prove that a public need existed for rezoning.
On this question, petitioners presented evidence that the purpose for expanding Cloverleaf Mall was to increase the size of the covered mall from 325,000 square feet to 425,000 square feet, thereby qualifying it as a regional mall with the ability to attract quality tenants. Considerable evidence was introduced to show the economic impact in the city generated by the development of the mall with reference to taxes, improvements, employment, and pay rolls with increases if the mall was increased in size.
The protestants countered with evidence that, of 1,000 acres centered around the cloverleaf of U.S. Highways 49 and 11, 479.6 acres are zoned for residential use, 397.5 acres zoned for commercial and light industrial use with the remaining 122.9 acres being located within the rights of way of the highways and railroad. Of the 397.5 acres zoned for commercial and light industrial use a total of 185.55 are vacant and not being used for commercial purposes. Included in the 185.55 acres is the 35 acre Currie West tract located on the west side of U.S. Highway 49 which is owned by the individual petitioners and is available for commercial development.
With respect to the allegations of petitioners that expansion of the mall will require additional parking area, the evidence shows that any additional parking required by increasing the size of the covered mall can be provided on the existing site without expanding the present commercial zone. The zoning ordinance of the City requires at least two square feet of parking area in a commercial zone for every square foot of store area. If the additions to the mall which petitioners propose are in fact made, there would remain a surplus parking area available after enlargement of the covered mall without rezoning in excess of 124,000 square feet. The official city planner of the City of Hattiesburg recommended to the Mayor and Commissioners that the petition be denied, verified that the proposed rezoning was not needed to comply with parking requirements, and commented upon the inefficient layout of the parking area of the Cloverleaf Mall.
Protestants also showed that 1,592 acres are presently zoned commercial in Hattiesburg but only 780 acres were actually being used for commercial purposes, leaving 812 acres available for commercial purposes. There is presently available a sufficient quantity of vacant property now zoned commercial to accommodate the need for commercial expansion in the City of Hattiesburg for many years. We therefore conclude that petitioners failed to show by clear and convincing evidence a public need for rezoning with the resultant encroachment in the residential area north of the Cloverleaf Mall. We affirm the judgment of the circuit court and vacate the ordinance rezoning the property in question.

ON MOTION TO DISMISS APPEAL
The Mayor and Commissioners of the City of Hattiesburg adopted an ordinance rezoning certain property on August 9, 1978. The minutes were read, approved and signed by the mayor and clerk on August 16, 1978. On the same day the appellees filed their notice of and petition for appeal with the mayor and commissioners and included a motion to grant additional time to prepare and submit a bill of exceptions. An order was duly entered granting appellees thirty days from August 16 within which to prepare and submit a bill of exceptions. On September 13, 1978 the board of mayor and commissioners adopted another order granting appellees thirty days from September 13 within which to complete and file a bill of exceptions. Six days later, on September 19, 1978, appellees completed the bill of exceptions and presented it to the mayor who signed it. The city clerk transmitted the bill of exceptions to the Circuit Court of Forrest County where it was filed on September 20, 1978.
*742 Appellants filed a motion to docket and dismiss in this Court for lack of jurisdiction, to vacate order of the circuit court and to reinstate the ordinance of the City of Hattiesburg rezoning certain property. Appellants argue that under section 11-51-75 Mississippi Code Annotated (1972)[1] that the circuit court failed to acquire jurisdiction because the bill of exceptions was filed more than ten days after the ordinance was adopted.
In McGee v. Jones, 63 Miss. 453 (1886) this Court affirmed the judgment of the Circuit Court of Holmes County striking a bill of exceptions and dismissed the appeal, but held that the time for taking a bill of exceptions could be extended by agreement of the parties or by an order of the court. This Court stated:
We can perceive no reason why a different rule should apply to bills of exception taken to the action of a board of supervisors than that which was announced in the case of Savings Bank v. Johnson, 56 Miss. 125, in reference to those taken in the circuit courts, viz.; that they must be taken during the term unless by consent of parties, or under an order of the court, to be evidenced by the record proper or by a recital in the bill itself, the time for presenting it is extended into the following vacation. The bill in this case was not taken during the term nor was there any permission of the court or consent of parties that it might be taken in vacation. (63 Miss. at 455)
This case authorizes filing a bill of exceptions after the time within which the statute requires the bill of exceptions to be filed either by agreement of the parties involved or by an order of the board which adopted the order appealed from. The rule announced represents a liberal policy toward reviewing actions of the boards involved and is a practical solution of the problem of preparing a bill of exceptions.
In McGee v. Beall, 63 Miss. 455 (1886) a bill of exceptions which was not signed during the term of the board of supervisors was not stricken because it was presented to the president of the board who withheld his signature until the following day in order to allow an examination by attorneys for appellee. He signed it after adjournment on the mutual understanding that no point would be made on the time of signing. The court held that although the objection to the bill of exceptions was not made in the trial court, it was jurisdictional and could be made in the Supreme Court for the first time. This Court declined to dismiss the bill of exceptions stating that the appellants had done all that was in their power *743 by preparing and tendering a proper bill of exceptions to the proper officer and ought not to suffer by reason of the neglect of the officer to promptly sign it.
In Hawthorne v. Town of Woodville, 107 Miss. 589, 65 So. 643 (1914) the mayor and board of aldermen of Woodville passed an order at the June term but the aggrieved parties did not prepare a bill of exceptions and submit it to the mayor until the end of September. The mayor refused to sign the bill of exceptions because it was not timely submitted. On appeal, we held that the bill of exceptions was not timely submitted and should be dismissed for that reason, but recognized that the time for preparing and perfecting a bill of exceptions could be extended into vacation following the term of the municipal board. We stated:
Section 80 of the Code provides that any person aggrieved by judgment or decision of the board of a city, town, or village may appeal to the next term of the circuit court of the county, and may embody the facts and decisions in the bill of exceptions, which shall be signed by the person acting as president of the municipal authorities. It appears that the bill of exceptions was not taken and signed during the term of the municipal board at which the order complained of was passed, and it does not appear that the time for preparing and perfecting the bill was extended into the vacation following the term. The mayor's reason for his refusal to sign the bill is sufficient... . (107 Miss. at 594, 595, 65 So. at 644)
An appeal from an order of the board of supervisors pertaining to a school board issue was involved in Board of Supervisors of Marshall County v. Stephenson, 160 Miss. 372, 134 So. 142 (1930). On August 9, 1929 the board of supervisors ordered bonds to be issued, set forth in its order that the "objectors and protestants ... excepting in open court, prayed an appeal from the said order to the Circuit Court of Marshall County, Mississippi, which appeal was granted." On September 3 the president of the board signed a bill of exceptions setting forth the evidence before the board at its August meeting. The record was filed by the clerk of the board of supervisors with the clerk of the circuit court on February 10, 1930. When the case came on for trial a motion was made to dismiss the appeal for the reason it was not perfected within the time provided by law. The motion was overruled, and on appeal to this Court, was assigned as error. We noted that the next term of the circuit court, after the meeting of the board of supervisors at which the order directing issuance of the bonds was entered, convened on the fourth Monday of August, 1929. This was before the bill of exceptions was signed and filed. Appellants contended that the bill of exceptions should have been dismissed. The parties agreed, before entry of the August 9 order authorizing issuance of the bonds, to the following:
"That whichever side loses before the board of supervisors may have thirty days from the final decision of said board in which to prepare, file, and have signed by the president thereof a bill of exceptions, to cover points raised before said board on said matters, up to and including said final decision, and to file petition for appeal." (160 Miss. at 380, 134 So. at 143)
We held that the bill of exceptions was properly filed and stated:
While the question is not without difficulty, it seems reasonably clear, when the statute is construed as a whole, that the next term of the circuit court to which an appeal from a decision of the board of supervisors must go is the term thereof next after the appeal has been perfected by the signing of the bill of exceptions by the president of the board of supervisors. This bill of exceptions should ordinarily be signed during the term of the board of supervisors at which the decision complained of was rendered, but may be signed after the adjournment of the board by agreement of the parties to the controversy in which the decision was rendered. McGee v. Jones, 63 Miss. 453.

*744 It may be that the time within which the bill of exceptions may be signed by agreement after the adjournment of the board must be reasonable; but if so, as to which we express no opinion, thirty days is not an unreasonable time for the perfecting and signing of such a bill of exceptions. The court below committed no error in overruling the motion to dismiss the appeal from the board of supervisors. (160 Miss. at 380, 381, 134 So. at 144)
From the foregoing case, it is apparent that this Court has adopted a liberal attitude toward permitting parties to file bills of exception when an appeal is taken from the orders of the board of supervisors or municipal authorities. In this case the bill of exceptions consisted of more than 250 pages and it appears that it would have been practically impossible to prepare such a lengthy and detailed bill of exceptions within ten days. The cases cited above recognize that the time for filing a bill of exceptions may be extended by agreement of the parties or by order of the board from which the appeal is taken.
In this case, time for preparing and filing the bill of exceptions was extended by orders of the Mayor and Commissioners. We are of the opinion that the Mayor and Commissioners were authorized to extend the time for preparing and filing the bill of exceptions so that appellees could have sufficient time to have the ordinance in question reviewed by an appellate court.
Appellants rely on the case of Shannon Chair Company v. City of Houston, 295 So.2d 753 (Miss. 1974) where the bill of exceptions was not presented to the mayor within ten days after the adjournment of the October, 1971 meeting of the mayor and board of aldermen. The time for appeal had expired and the fact that the mayor signed the bill of exceptions at a later date was of no effect. This case is distinguished from the case at bar because no request was made for an extension of time within which to prepare the bill of exceptions within the ten days allowed by statute. For the reasons stated, we overrule the motion to docket and dismiss filed by appellants, and hold that a board, under section 11-51-75, may extend the time for filing a bill of exceptions if the order of extension is signed within ten days of the order appealed from.
AFFIRMED, AND MOTION TO DISMISS APPEAL OVERRULED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
NOTES
[1] Any person aggrieved by a judgment or decision of the board of supervisors, or municipal authorities of a city, town or village, may appeal within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision, and may embody the facts, judgment and decision in a bill of exceptions which shall be signed by the person acting as president of the board of supervisors or of the municipal authorities. The clerk thereof shall transmit the bill of exceptions to the circuit court at once, and the court shall either in term time or in vacation hear and determine the same on the case as presented by the bill of exceptions as an appellate court, and shall affirm or reverse the judgment. If the judgment be reversed, the circuit court shall render such judgment as the board or municipal authorities ought to have rendered, and certify the same to the board of supervisors or municipal authorities. Costs shall be awarded as in other cases. The board of supervisors or municipal authorities may employ counsel to defend such appeals, to be paid out of the county or municipal treasury. Any such appeal may be heard and determined in vacation in the discretion of the court on motion of either party and written notice for ten (10) days to the other party or parties or the attorney of record, and the hearing of same shall be held in the county where the suit is pending unless the judge in his order shall otherwise direct.

Provided, however, that no appeal to the circuit court shall be taken from any order of the board of supervisors or municipal authorities which authorizes the issuance or sale of bonds, but all objections to any matters relating to the issuance and sale of bonds shall be adjudicated and determined by the chancery court, in accordance with the provisions of sections 31-13-5 to 31-13-11, both inclusive, of the Mississippi Code of 1972. And all rights of the parties shall be preserved and not foreclosed, for the hearing before the chancery court, or the chancellor in vacation. Provided, further, nothing in this section shall affect pending litigation.