KITCHENS, Justice,
for the Court.
¶ 1. The Jackson City Council adopted two amendments to the city’s zoning ordinance, allowing the Fairview Inn, a bed and breakfast inn, to operate a restaurant. Certain neighbors opposed the amendments and appealed to the Circuit Court of the First Judicial District of Hinds County. Ultimately, the circuit court upheld the amendments, and the opponents of the amendments have appealed to this Court. Finding that the amendments constitute illegal spot zoning, we reverse the circuit court and render judgment here in favor of the appellants.

Facts

¶ 2. The Fairview Inn is located in a residential zone in the Belhaven historic preservation district in the City of Jackson. At the time in question, the Inn was owned by William and Carol Simmons, but was sold to Sharp Hospitality, LLC, in 2006. Although the Fairview Inn is surrounded by mostly residential dwellings, it also borders commercial properties located along North State Street. The appellants, Mark and Anita Modak-Truran and Daniel and Katherine Baker, live directly across Fairview Street from the Inn. All four of the appellants are attorneys and have represented themselves throughout these proceedings.
¶ 3. All of these properties are located in an “R-2 Single-Family and Two-Family Residential District.” According to the Jackson City Zoning Ordinance,
The purpose of this district is to provide areas for the development of low to medium density residential uses and structures. It is the intent of this Ordinance that these districts be located in areas of the City where a protected environment suitable for moderate density residential use can be provided, as well as in established moderate density residential areas as a means to ensure their continuance.
Jackson, Miss., Zoning Ordinance § 602.05 (1974).
¶ 4. In 1993, the City granted the owners of the Fairview Inn a permanent use permit to operate a “Bed and Breakfast Inn, Class B.” The zoning ordinance defines a “Bed and Breakfast Inn, Class B” as
An Owner occupied dwelling which is the primary residence of the owner and where a portion of the dwelling is available for short-term lodging and where receptions or other social gatherings may be held. Meals may only be served to lodgers or guests of receptions and other social gatherings.
Jackson, Miss., Zoning Ordinance § 202.17 (2002) (emphasis added).
¶ 5. In 2003, the Inn began to advertise itself as a restaurant open to the general public. The Inn had taken the position that serving meals to the public on a reservation-only basis would qualify as a “social gathering” and would not violate its use permit as a Class B bed and breakfast inn. On September 22, 2003, the City’s zoning administrator notified the Fairview Inn via letter that it could not operate such a restaurant under its current use permit. According to the letter, “it has never been the city’s intent that a Bed & Breakfast Inn ‘Class B’ be permitted to serve dinner on a nightly basis.” The letter went on to *208 “caution [the Inn] against the sale of regular dinners to the public under the caption of ‘social gatherings’, as is only permitted by restaurants properly designated and operating within the City.”
11 6. Two days later, after meeting with the owners of the Inn, the zoning administrator wrote another letter, stating that “the Fairview Inn does not currently violate the terms of the Zoning Ordinance.” The administrator was now of the opinion that “social gatherings” could also include “social events whereby the host or hostess schedule [sic] an event prior to the actual date and make [sic] arrangements with the Inn for service to be provided.”
¶ 7. In the meantime, the attorney for the Simmonses began making overtures to the City for amendments to the zoning ordinance that would allow the Fairview Inn to serve meals to the public.. The first proposed amendment created a new zoning definition titled “Bed and Breakfast Inn Class B with Restaurant.” The amendment provides
Section 202.17(a) Bed and Breakfast Class B with Restaurant: An owner occupied dwelling, which is the primary residence of the owner and where a portion of the dwelling is available for short-term lodging and where receptions or other similar private functions may be held. Meals may be served to lodgers, guests of receptions and other private functions and the general public as follows: A Bed and Breakfast Inn, Class B with Restaurant may engage in the preparation and retail sale of food and beverages, including the sale of alcoholic beverages. Customers are served their food, or beverages by a restaurant employee at the same table at which said items are consumed. Advertising on local billboards is prohibited. The prohibition will not preclude, however, mailings or advertisements in newspapers and in national, regional, state or local travel and tourism periodicals.
¶ 8. The second amendment governed the use permits associated with the new “Bed and Breakfast Inn Class B with Restaurants.”

Section 602.02.03: Uses Which May be Permitted as Use Permits:

Class B Bed and Breakfast Inn with Restaurant. It is expressly understood that a separate Use Permit is required to operate a restaurant in a Class B Bed and Breakfast Inn. Any existing Class B Bed and Breakfast Inns who determine that they wish to operate a restaurant in conjunction with their Class B Bed, and Breakfast Inn is [sic] permitted to do so by ñght subject to receipt of a statement indicating this election.
(Emphasis added.) Because the Fairview Inn was the only Class B bed and breakfast in the city, this amendment effectively exempted the Inn from having to obtain a new use permit in order to operate a restaurant.
¶ 9. On January 28, 2004, the City Council brought the two proposed amendments to the zoning ordinance before the Jackson City Planning Board. After a full hearing, the planning board issued a “negative recommendation” to the City Council.
¶ 10. Despite the negative recommendation, on April 7, 2004, the Jackson City Council held a public hearing on the amendments. Five council members were present: Dr. Leslie Burl McLemore, Margaret Barrett-Simon, Bettye Dagner-Cook, Bo Brown, and Ben Allen. The lawyers for each side were given ten minutes each to present their arguments to the council, and the council heard public comments for and against the amendments.
¶ 11. The attorney for the Fairview Inn argued that a restaurant was needed to *209 provide the Inn another source of revenue. He noted that the property would remain in a residential zone and argued that the Inn had sufficient parking to handle any additional traffic. The attorney submitted a written statement by the Fairview Inn which claimed that “[t]he proposal would simply give Fairview the right to choose to advertise its existing fine dining offering directly (offered presently under its authority to serve meals to ‘social gatherings’) as a ‘restaurant’, and without the limitation of day-ahead reservations.” Among the documents attached to the statement were pictures and plot plans of the Inn’s property, copies of the Inn’s leases of off-street parking facilities, letters and petitions in support of the amendments, and the 1993 permanent use permit.
¶ 12. Mr. Baker spoke as the attorney for the opponents. He argued that the amendments would effectively rezone the Inn from residential to commercial. Mr. Baker contended that a restaurant was not compatible with the residential character of the neighborhood, that it would be damaging to the surrounding property owners, that it would create a hazard to the children living in the area, that it was not in harmony with the City’s comprehensive plan, and that it would increase traffic in the area. Mr. Baker also submitted a written statement along with a map of the area, signatures of other homeowners in the area who opposed the amendments, photographs depicting traffic and parking problems on Fairview Street, ads for the Inn, and the transcript of the planning board hearing.
¶ 13. At the close of the arguments and public comment, the city council unanimously voted 5-0 to adopt the proposed amendments. Aggrieved, the Bakers and the Modak-Trurans appealed to the Circuit Court of the First Judicial District of Hinds County. The trial judge appointed Lee Turner as a special master for the case. Special Master Turner filed a report and recommendation, finding that the amendments amounted to illegal spot zoning. Circuit Judge Bobby Delaughter rejected the special master’s recommendation and affirmed the city council’s adoption of the amendments. From this decision, the Bakers and the Modak-Trurans appeal to this Court.

Issues

¶ 14. The Bakers and Modak-Trurans raise various issues about the propriety of the amendments. They argue that the city council’s decision to amend the zoning ordinance (1) constituted illegal rezoning; (2) resulted in illegal “spot zoning”; (3) violated their due process rights; (4) was arbitrary and capricious; and (5) that the amendments are unconstitutionally vague.

Standard of Review

¶ 15. A zoning decision will be upheld on appeal unless it is “arbitrary, capricious, discriminatory, or is illegal or without a substantial evidentiary basis.” Town of Florence v. Sea Lands, Ltd., 759 So.2d 1221, 1223 (quoting Faircloth v. Lyles, 592 So.2d 941, 943 (Miss.1991)). “Thei-e is a presumption of validity of a governing body’s enactment or amendment of a zoning ordinance and the burden of proof is on the party asserting its invalidity.” Perez v. Garden Isle Cmty. Ass’n, 882 So.2d 217, 219 (Miss.2004) (quoting Carpenter v. City of Petal, 699 So .2d 928, 932 (Miss.1997)).
¶ 16. An example of an arbitrary or discriminatory zoning decision is “spot zoning.” In the present case, the special master determined that the amendments to the zoning ordinance were invalid because they resulted in impermissible spot zoning. Spot zoning is defined as “a small island of relatively intense use surrounded by a sea of less intense use.” 2 E.C. Yokley, Zon *210 ing Law and Practice § 13-2 (4th ed.2000). The term has been used to describe a zoning ordinance which is amended to “re-classifyt ] one or more tracts or lots for a use prohibited by the original zoning ordinance and out of harmony therewith.” Drews v. City of Hattiesburg, 904 So.2d 138, 141 (Miss.2005) (quoting McWaters v. City of Biloxi, 591 So.2d 824, 828 (Miss.1991)).
¶ 17. Whether an action will be void for impermissible spot zoning is determined by the particular circumstances of each case. Id. Spot zoning has been held to be invalid “when it is primarily for the private interest of the owner of the property affected, and not related to the general plan for the community as a whole.” 2 Yokley, supra § 13-3. In other words, a zoning amendment which favors a particular landowner over adjacent landowners will be viewed as an arbitrary and discriminatory use of zoning authority unless there is “substantial evidence of change in the neighborhood in order to justify the rezoning of a small tract as an amendment in keeping with the comprehensive plan.” Id. at § 13-4.
¶ 18. The City of Jackson insists that the amendments in question are pure “text amendments” and not a rezoning. The circuit judge agreed, reasoning that “[t]he text amendments do not make any changes to the City’s zoning map,” and that the area would maintain its R-2 zoning classification. He also concluded that the amendments “simply modify a ‘use’ definition,” and that they would not “open the proverbial floodgates unleashing commercial development.” Yet, the labeling of an action as a “text amendment” does not make it so if the City’s actions effectively rezone a residential plot for commercial use. This Court has recognized that the name given a municipal act does not dictate its nature. See Luter v. Oakhurst Assocs., Ltd., 529 So.2d 889, 893 (Miss.1988) (holding that a “resolution” was in fact an ordinance).
¶ 19. In an analogous case, Drews v. City of Hattiesburg, 904 So.2d 138 (Miss.2005), this Court struck down the Hatties-burg City Council’s grant of several zoning variances as illegal spot zoning, rejecting the city’s argument that the variances did not constitute a rezoning. In Drews, the city granted a development company six variances to the city’s zoning ordinance on a lot zoned B-l. Id. at 140. The variances would have allowed an increase in building height from 35 to 45 feet and an increase in the size of a building from 10,000 to 60,000 square feet. Id. This Court reversed and rendered the circuit court’s judgment affirming the variances, concluding that illegal spot zoning had occurred. The Drews opinion noted that “serious questions arise when a variance is granted to permit a use otherwise prohibited by the ordinance; e.g., a service station or quick-stop grocery in a residential district. The most obvious danger is that the variance will be utilized to by-pass procedural safeguards required for valid amendment.” Id. at 141 (quoting Robert C. Khayat & David L. Reynolds, Zoning Law in Mississippi, 45 Miss. L.J. 365, 383 (1974)). According to this Court, “it [was] clear that the City of Hattiesburg ha[d] attempted to bypass the safeguards provided by the rezoning process,” because the changes were “so dramatic that they constitute^] a rezoning to B-3, two levels beyond the B-l (professional business district) lots in question.” Id. at 141-42.
¶ 20. Similarly, in the present case, the amendments allow the Fairview Inn to conduct highly commercial operations within an area restricted to one- and two-family dwellings. Before the amendments, the only use permits allowed in R-2 zones were for limited purposes such as *211 schools, churches, and group homes. Zoning Ordinance § 602.02.3. However, with the addition of “Class B Bed and Breakfast with Restaurant,” the Fairview Inn was granted permission to operate a general restaurant within an R-2 zone, an activity allowed in areas zoned C-3 commercial districts. In addition, by allowing existing Class B bed and breakfast inns to operate restaurants “as of right,” the amendments exempted the Fairview Inn from having to apply for a use permit. The special master correctly determined that the amendments significantly altered and expanded the activities previously allowed on R-2 properties, and effectively rezoned the Fairview Inn from residential to commercial property. As in Drews, the amendments effectively circumvent the stringent procedural requirements for rezoning.
¶21. Moreover, the City does not dispute that the only business affected by the amendments was the Fairview Inn. Indeed, the entire debate was focused on the Inn and its activities. There can be no dispute that the amendment was designed to favor the Inn, and such preferential treatment constitutes illegal spot zoning because the City has not demonstrated “substantial evidence of change in the neighborhood in order to justify the rezoning of a small tract as an amendment in keeping with the comprehensive plan.” 2 Yokley, supra § 13-4. Regarding evidence of change, the circuit court observed “there is no such evidence whatever.”

Attorneys’ Fees.

¶ 22. The Modak-Trurans also ask this Court to remand the case for an award of attorneys’ fees and costs in connection with their claim under Section 1983 of Title 42 of the United States Code. The City asserts that the Modak-Trurans never filed a Section 1983 action, but the original complaint clearly requests relief under this federal statute. However, neither the special master nor the circuit judge ever addressed this issue, and they were never asked to do so, by motion or otherwise. Moreover, no proof was adduced on this subject.
¶ 23. Although the special master found that the City’s actions constituted illegal spot zoning, he never addressed the Mo-dak-Trurans’ Section 1983 claim. When the City objected to the special master’s report and asked for a hearing on the matter, the Modak-Trurans did not ask the circuit court to consider their federal claim or request a hearing for a determination of reasonable attorneys’ fees and costs. Instead, the Modak-Trurans requested that the trial court accept the special master’s report without a hearing. The record is simply devoid of any proof of the Modak-Trurans’ fees or expenses. By failing to request such relief from the circuit court and by failing to submit any proof of their attorneys’ fees or expenses, the Modak-Trurans have abandoned and waived their Section 1983 claims, and this Court should not address the issue. See, e.g., Lamb Constr. Co. v. Renova, 573 So.2d 1378, 1384 (Miss.1990) (finding cross-appeal for attorneys’ fees and costs without merit where there was no evidence of such expenses in the record).

Conclusion

¶ 24. Although the City proceeded under the auspices of a “text amendment,” the changes to the zoning ordinance effectively rezoned residential property for the sole favor and benefit of the Fairview Inn. Such action constitutes impermissible spot zoning. Therefore, we reverse the circuit court’s judgment affirming the amendments and render judgment in favor of the appellants.
¶ 25. REVERSED AND RENDERED.
*212 WALLER, C.J., GRAVES, P.J., DICKINSON, RANDOLPH AND PIERCE, JJ., CONCUR. CARLSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR AND CHANDLER, JJ.