38 So.3d 677 (2010)
Jimmy COLLINS and Felicia Collins, Appellants
v.
MAYOR AND COUNCIL OF the CITY OF GAUTIER, Mississippi, Appellees.
No. 2008-CA-01929-COA.
Court of Appeals of Mississippi.
June 29, 2010.
*679 John Paul Barber, Biloxi, attorney for appellants.
Amy Lassitter St. Pe', Robert G. Ramsay, Robert W. Wilkinson, Pascagoula, attorneys for appellees.
EN BANC.
BARNES, J., for the Court:
¶ 1. This appeal arises from a decision of the Mayor and the City Council of Gautier, Mississippi (collectively, the City or city council) to rezone a 13.5-acre lot from R-1, single-family residential, to R-2, multi-family residential, at the developer's request. Silver Girl, LLC, the owner and developer, wishes to construct condominiums on the subject property. Jimmy and Felicia Collins, owners of property adjacent to the subject property, opposed the rezoning and filed an appeal with the circuit court. The circuit court affirmed the City's decision, and the Collinses now appeal to this Court, arguing that the city council's decision was arbitrary and capricious. Finding that there was not substantial evidence to support the rezoning and that the rezoning constituted illegal "spot zoning," we reverse and render.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. The subject property is located to the south of Roy's Road in Gautier, near the intersection of Roy's Road and Martin Bluff Road, the major corridor in the area. Roy's Road lies to the north of the subject property, while Martin Bluff Road lies to the west. Several single-family residences lie between the subject property and the aforementioned roads, abutting both, but on its eastern side the subject property has frontage along Roy's Road. The subject property and its immediate surroundings were zoned R-1 by Jackson County prior to annexation by the City in February 2002. The City retained the County's R-1 zoning after annexation.
¶ 3. The City uses a two-tiered process for changing its zoning ordinances. First, a planning commission reviews re-zoning requests and makes recommendations to the city council. Afterwards, the city council accepts or rejects the planning commission's recommendations. On January 14, 2008, Silver Girl, LLC filed an application seeking to rezone the subject property from R-1 single-family residential to R-2 multi-family residential. Documents submitted in support of the application show a proposal to construct a 120-unit condominium development to be called "Frenchman's Ridge." The development would consist of eight four-story buildings and 309 parking spaces. Prior to the planning commission's hearing, the director of the City's community services department issued a written report regarding the rezoning request. The report recommended that the application be denied, citing concerns that the subject property would be an "island" surrounded by land zoned R-1. The report ultimately concluded, however, that an argument could be made for or against rezoning.
¶ 4. On February 7, 2008, the planning commission conducted a public hearing on the rezoning request. After hearing testimony and arguments, the commission denied the request, finding that the developer had not shown that the character of the *680 neighborhood had changed. The developer appealed the commission's decision to the city council, which held a public hearing on the matter on March 18, 2008. At the hearing, the developer offered additional arguments and evidence, including a document that it had prepared detailing what it asserted were seven changes in the neighborhood that supported its rezoning request. Several citizens appeared at the hearing and offered arguments and evidence against the rezoning request. The opponents also presented a petition signed by fifty-one residents opposing the rezoning.
¶ 5. Ultimately, the city council unanimously passed an ordinance granting the rezoning request. The ordinance specifically found a substantial change in the neighborhood and a public need for rezoning. The Collinses appealed the city council's decision to the circuit court. Finding that the city council's decision was supported by substantial evidence, the circuit court affirmed the decision. Aggrieved by that decision, the Collinses appeal arguing: (1) there was not substantial evidence in the record of a change in the character of the neighborhood or a public need sufficient to justify rezoning; (2) the rezoning ordinance constituted illegal "spot zoning"; and (3) the rezoning ordinance was illegal because it was not enacted in accordance with a comprehensive plan. Finding that there was not substantial evidence to support the rezoning and that the rezoning resulted in illegal "spot zoning," we reverse and render the judgment of the circuit court.

STANDARD OF REVIEW
¶ 6. The Mississippi Supreme Court has stated:
The classification of property for zoning purposes is a legislative rather than a judicial matter. The order of the governing body may not be set aside unless it is clearly shown to be arbitrary, capricious, discriminatory, or is illegal, or without a substantial evidentiary basis. The action of the Board of Supervisors in enacting or amending an ordinance, or its action of rezoning, carries a presumption of validity, casting the burden of proof upon the individual or other entity asserting its invalidity. On appeal we cannot substitute our judgment as to the wisdom or soundness of the Board's action. We have stated that where the point in controversy is "fairly debatable," we have no authority to disturb the action of the zoning authority.
Childs v. Hancock County Bd. of Supervisors, 1 So.3d 855, 859 (¶ 12) (Miss.2009) (quoting Faircloth v. Lyles, 592 So.2d 941, 943 (Miss.1991)). "Judicial review is limited to determining whether there was a substantial evidentiary basis for the [local government's] decision. It is not the role of the judiciary to reweigh the evidence, but rather to verify if substantial evidence exists." Id. at 861 (¶ 19).
¶ 7. However, "a clear distinction exists between the burden an individual must meet when requesting that a parcel of property be rezoned and the burden which is required on appeal to overturn the presumptively valid zoning decision of a local governing body." Id. at 859 (¶ 13). "When contesting a rezoning classification, the burden of proof is on the individual or other entity asserting its invalidity." Id. at 861 (¶ 20) (internal quotations omitted). Our task on appeal is "to determine whether the circuit court erred in its judicial review of whether the [local authority's] decision to rezone was arbitrary and capricious and unsupported by substantial evidence." Id. at 860 (¶ 18).

Whether there was substantial evidence to support rezoning.
¶ 8. "The courts presume that comprehensive zoning ordinances adopted *681 by municipal authorities are well planned and designed to be permanent." Town of Florence v. Sea Lands, Ltd., 759 So.2d 1221, 1224 (¶ 11) (Miss.2000) (quoting Cloverleaf Mall, Ltd. v. Conerly, 387 So.2d 736, 740 (Miss.1980)). Therefore, "[b]efore property is reclassified, an applicant seeking rezoning must prove by clear and convincing evidence either that[:] (1) there was a mistake in the original zoning, or (2) the character of the neighborhood has changed to such an extent as to justify rezoning and that a public need exists for rezoning." Childs, 1 So.3d at 859-60 (¶ 13) (quoting Bridge v. Mayor and Bd. of Aldermen of Oxford, 995 So.2d 81, 83 (¶ 6) (Miss.2008)).
¶ 9. No mistake in the original zoning has been alleged. In its ordinance, the city council approved the rezoning as it expressly found a change in the character of the neighborhood and the existence of a public need for rezoning the subject property to R-2. However, the city council did not make detailed or specific findings of fact regarding the change in the character of the neighborhood or the public need for rezoning; it stated only that its finding was "based on the evidence presented." The supreme court has acknowledged that specific findings are not required, so long as the record contains substantial evidence to support the required findings. In Faircloth, 592 So.2d at 945, the supreme court stated:
Absent a record showing sufficient evidence to support the findings, it is inevitable that reversal will follow. On the other hand, while recognizing the desirability of specific findings by the zoning authority on each considered issue, we will not reverse for a lack of such specificity where a factual basis for the action is disclosed.
Furthermore, "informality attends rezoning proceedings...." Bd. of Aldermen, City of Clinton v. Conerly, 509 So.2d 877, 885 (Miss.1987). The city council was entitled to rely upon the entire record before itinformation obtained at the hearings, hearsay evidence, and the council's "own common knowledge and the familiarity with the ordinance area" are all valid bases for its findings. Childs, 1 So.3d at 860 (¶¶ 14-16). On appeal, the City points to the record and hearings before the city council and the planning commission, as well as the documents that were submitted in support of the developer's application for rezoning.
¶ 10. The Collinses' primary argument against the City's evidence is that much of it is irrelevant as it focuses on changes in the area surrounding Martin Bluff Road, rather than Roy's Road, which the subject property fronts. The Collinses argue that the neighborhood at issue is the Roy's Fish Camp Community, consisting of Martin Bluff Elementary School, single-family properties located along Roy's Road, several single-family residential streets for which Roy's Road is the only means of entrance and egress, and several small commercial operations at the eastern end of Roy's Road. Citing Kuluz v. City of D'Iberville, 890 So.2d 938, 941-42 (¶¶ 6-7) (Miss.Ct.App.2004), the City responds that what constitutes the "neighborhood" relevant to this analysis should be determined by the local authority, and its decision should not be disturbed so long as sufficient evidence renders the issue "fairly debatable." We agree this is the applicable rule, and we likewise agree with the City's contention that the large size of the property in question and its proximity to Martin Bluff Road are sufficient to support the finding of a broader "neighborhood," notwithstanding that the property fronts Roy's Road. In fact, this issue and these arguments were specifically raised at the hearing before the city council. We can *682 find no basis in the record to say that its decision finding a broader definition of "neighborhood," in this instance, was arbitrary and capricious.
¶ 11. Even so, we find no change in the character of the neighborhood. We recognize that this Court affords deference to a zoning decision of a local governing board and presumes that its decision is valid. See Mayor and Bd. of Aldermen v. Estate of Lewis, 963 So.2d 1210, 1214 (¶ 9) (Miss.Ct.App.2007). However, "[i]t is clearly within the judicial discretion on review to reverse a rezoning ordinance adopted on insufficient proof." City of Oxford v. Inman, 405 So.2d 111, 114 (Miss.1981). "The Mississippi Supreme Court has not hesitated to reverse... decisions regarding rezoning when substantial evidence of change in the character of the area is not met." Cockrell v. Panola County Bd. of Supervisors, 950 So.2d 1086, 1092 (¶ 14) (Miss.Ct.App.2007). We find that the evidence presented was insufficient to support the change in zoning. The principal evidence presented to justify the rezoning was summarized in a document prepared by the developer for the city council hearing. It states in pertinent part:
1. Martin Bluff [R]oad is a two lane road. Construction is supposed to start soon making it a four lane road.
2. River Bend apartments to the southwest of this parcel recently converted to condominium ownership. This is in the R-2 zone that is less than an eighth of a mile from the Frenchman Ridge property.
3. There is a new and very large apartment complex in the R-2 zone southwest of Frenchman's Ridge, less than a quarter of a mile away.
4. Recently a conditional use was granted to build a private school in the R-1 zone north of the Santa Maria mobile home park. We estimate this conditional use parcel to be about a quarter of a mile from Frenchman's Ridge.
5. The Santa Maria mobile home park is growing very fast, at least partly, we believe, because of the shortage of housing in the area.
6. Until the storm, Roy['s][R]oad had several businesses on the east end. Because of storm damage, only the boat launch is still in operation. We believe this is a neighborhood change that will reduce traffic.
7. In February of 2007, approval was granted for Farragut Lake condominiums which we estimate to be a mile or less to the north of Frenchman's Ridge, north of the interstate.
The Collinses submit in their brief that these developments "are built on land zoned for such uses and are consistent with existing uses on Martin[] Bluff Road," and the City has not refuted this claim. Thus, each of these "changes," with the exception of the private school, were in accordance with the original zoning plan. We must agree with the Collinses, finding that the record reflects that the areas in which the condominiums and new apartment complex were being built were already zoned R-2 or C-2.[1]
*683 ¶ 12. The Mississippi Supreme Court has held that "the use of property in accordance with an original zoning plan is not a material change of conditions which authorizes rezoning." Cloverleaf Mall, Ltd. v. Conerly, 387 So.2d 736, 740 (Miss.1980); see also Cockrell, 950 So.2d at 1092 (¶ 14). We find Inman instructive. In that case, the City of Oxford approved a zoning change for 8.33 acres from A-1 (agricultural) to R-C (multi-family residential). The proponents cited changes in the nearby area such as the building of a low-rent housing project across the street from the property, the building of a 25,000-foot recreational center at the junction of Price Street and Molly Barr Road, and the construction of a major street across the subject property. The supreme court held that "the building of the C.B. Webb low-rent housing and recreational facility as well as road expansion were changes in accordance with the original zoning plan"; thus, they did not constitute a material change that would warrant rezoning. Inman, 405 So.2d at 114. The supreme court in that case affirmed the circuit court's reversal of the zoning reclassification. Here, as the circuit court affirmed the approval of the zoning change, we reverse the circuit court's judgment and render the zoning change invalid as there was not substantial evidence to support a finding of a change in the character of the neighborhood.
¶ 13. In a related issue, the Collinses assert that the City's decision represents a prime example of "spot zoning" Again, we agree. The supreme court has defined "spot zoning" as a zoning amendment "reclassifying one or more tracts or lots for a use prohibited by the original zoning ordinance and out of harmony therewith." McWaters v. City of Biloxi, 591 So.2d 824, 828 (Miss.1991). A zoning ordinance is illegal "spot zoning" where it is "not in harmony with the comprehensive or well-considered land use plan of a municipality" and is "designed to favor someone." Id. (citations omitted). Zoning ordinances and amendments are presumptively valid. Childs, 1 So.3d at 859 (¶ 12). The burden of proof falls on the party asserting the ordinance's invalidity. Id. The supreme court has defined "spot zoning" as "a small island of relatively intense use surrounded by a sea of less intense use." Modak-Truran v. Johnson, 18 So.3d 206, 209-10 (¶ 16) (Miss.2009) (quoting 2 E.C. Yokley, Zoning Law and Practice § 13-2 (4th ed.2000)). There is no question that this reclassification would create an "island" of R-2 zoned property in the midst of R-1 zoned property. Both before and after the re-zoning, the property does not abut any area zoned R-2. The proponents for the zoning change admitted as much during their presentation to the planning commission, stating:
Mrs. Johnson: And there's no R-2 that touches you.
Mr. Scott: We do not touch R-2.
Mrs. Johnson: You are sitting right in the middle of R-1?
Mr. Scott: That's correct.
Mr. Wishtischin: By 50 feet.[2]

*684 Mrs. Johnson: You are R-1.
Mr. Scott: Yes.
The supreme court further held in Modak-Truran that:
Spot zoning has been held to be invalid "when it is primarily for the private interest of the owner of the property affected, and not related to the general plan for the community as a whole." 2 Yokley, supra § 13-3. In other words, a zoning amendment which favors a particular landowner over adjacent landowners will be viewed as an arbitrary and discriminatory use of zoning authority unless there is "substantial evidence of change in the neighborhood in order to justify the rezoning of a small tract as an amendment in keeping with the comprehensive plan." Id. at § 13-4.
Id. at (¶ 17) (emphasis added). We have already found that no "substantial evidence of a change in the neighborhood" was presented which justified the rezoning. Further, this reclassification clearly favored the developer over the adjacent landowners; accordingly, we find that it constituted invalid "spot zoning."

CONCLUSION
¶ 14. We agree with the findings of the planning commission that the proponents for reclassification of the property at issue failed to present sufficient evidence to prove a substantial change in the neighborhood. Accordingly, we reverse the judgment of the circuit court and render the zoning reclassification invalid.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
IRVING, GRIFFIS, ROBERTS AND MAXWELL, JJ., CONCUR. MYERS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., AND LEE, P.J. ISHEE AND CARLTON, JJ., NOT PARTICIPATING.
MYERS, P.J., Dissenting:
¶ 16. The majority concludes that the Circuit Court erred in affirming the City of Gautier's decision to rezone the subject property. The City found a substantial change in the neighborhood and a public need for rezoning the subject property to multifamily residential. The majority finds that the changes cited by the City were "in accordance with the original zoning plan" and therefore not legitimate factors for its consideration. I dissent because I find the majority's conclusions unsupported by the record and the City's decision beyond our authority to disturb on appeal.
¶ 17. In Childs v. Hancock County Board of Supervisors, 1 So.3d 855, 861 (¶ 19) (Miss.2009), the supreme court succinctly laid out our standard of review for such decisions:
Judicial review is limited to determining whether there was a substantial evidentiary basis for the Board's decision. It is not the role of the judiciary to reweigh the evidence, but rather to verify if substantial evidence exists. Neither the circuit court nor the Supreme Court has the power to tamper with municipal zoning unless the zoning decision is shown to be arbitrary, capricious, discriminatory, illegal, or without substantial evidentiary basis.
(Citation and internal quotations omitted.) Moreover, the supreme court reaffirmed its prior holdings that the actions of the local authority are presumptively valid. "The action of the [local authority] in enacting or amending an ordinance, or its action of rezoning, carries a presumption of validity, casting the burden of proof upon the individual or other entity asserting *685 its invalidity." Id. at 859 (¶ 12) (quoting Faircloth v. Lyles, 592 So.2d 941, 943 (Miss.1991)). "The classification of property for zoning purposes is a legislative rather than a judicial matter. The order of a governing body may not be set aside unless it is shown to be arbitrary, capricious, discriminatory, or is illegal, or without a substantial evidentiary basis." Id. at 860-61 (¶ 18) (quoting Fondren N. Renaissance v. Mayor of Jackson, 749 So.2d 974, 977 (¶ 7) (Miss.1999)) (emphasis added).
¶ 18. A comprehensive zoning plan is defined by Mississippi Code Annotated section 17-1-1(c) (Supp.2009), which states:
"Comprehensive plan" means a statement of public policy for the physical development of the entire municipality or county adopted by resolution of the governing body, consisting of the following elements at a minimum:
(i) Goals and objectives for the long-range (twenty (20) to twenty-five (25) years) development of the county or municipality. Required goals and objectives shall address, at a minimum, residential, commercial and industrial development; parks, open space and recreation; street or road improvements; [and] public schools and community facilities.
(ii) A land use plan which designates in map or policy form the proposed general distribution and extent of the uses of land for residences, commerce, industry, recreation and open space, public/quasi-public facilities and lands. Background information shall be provided concerning the specific meaning of land use categories depicted in the plan in terms of the following: residential densities; intensity of commercial uses; industrial and public/quasi-public uses; and any other information needed to adequately define the meaning of such land use codes. Projections of population and economic growth for the area encompassed by the plan may be the basis for quantitative recommendations for each land use category.
(iii) A transportation plan depicting in map form the proposed functional classifications for all existing and proposed streets, roads and highways for the area encompassed by the land use plan and for the same time period as that covered by the land use plan. Functional classifications shall consist of arterial, collector and local streets, roads and highways, and these classifications shall be defined on the plan as to minimum right-of-way and surface width requirements; these requirements shall be based upon traffic projections. All other forms of transportation pertinent to the local jurisdiction shall be addressed as appropriate. The transportation plan shall be a basis for a capital improvements program.
(iv) A community facilities plan as a basis for a capital improvements program including, but not limited to, the following: housing; schools; parks and recreation; public buildings and facilities; and utilities and drainage.
¶ 19. The Collinses have argued that the changes cited by the City were "in accordance with the original zoning plan," but they have failed to substantiate this allegation with evidence in the recordit contains no zoning plan for this court to review. In fact, the Collinses' principal argument on appeal is that the City does not even have a comprehensive plan.[3] *686 Neither of these arguments were raised before the city council or the planning commission; they have been made for the first time on appeal.
¶ 20. The only evidence in the record concerning the contents of the City's comprehensive plan was offered by the developer: it includes what purports to be a zoning map showing the subject property and its immediate surrounding area, to a radius of approximately one mile,[4] and generalized descriptions of the land use categories assigned to nearby parcelsi.e., R-1 is "single-family residential," R-2 is "multi-family residential," and C-2 is "commercial." No complete definitions have been offered. In fact, there is no record regarding the contents of the plan sufficient to satisfy any of the four requirements for a comprehensive plan enumerated in section 17-1-1(c)no twenty or twenty-five year development plan, no comprehensive land-use map with specific zoning definitions, no transportation plan, and no community facilities plan.
¶ 21. Because of the state of the record, I cannot dismiss the changes in the neighborhood cited by the City as developments in accordance with its comprehensive plan. To do so without examining the City's zoning ordinances would violate this Court's standard of review on appeal; zoning amendments are presumptively valid and the burden of proving them invalid falls upon party asserting their invalidity. Childs, 1 So.3d at 859 (¶ 12). The majority turns this presumption on its head, finding for the Collinses because "the City has not refuted this claim."
¶ 22. In reviewing the record, there is good reason to believe that many of the changes cited by the City were not, in fact, in accordance with the original zoning planeven if some of those uses were permitted by the present zoning. At the time of the original zoning, the "Santa Maria Park" to the north of the subject property along Martin Bluff Road was either a water park or an RV park; at the time of rezoning, it was alternatively called either a "trailer park" or a "FEMA park." Nor has it been shown that the increased density of multi-family housing in the R-2 and C-2 zones to the south was in accordance with the original plan. Moreover, nothing in the record indicates that the planned expansion of Martin Bluff Road to four lanes was contemplated in the original zoning. It is likewise unclear from the record where the Farragut Lake Apartments are located or what the zoning classification was at the time of the original zoning ordinance.[5] And, although the majority is technically correct in stating that the rezoning renders the subject property an "island" of R-2, surrounded by R-1, it is a relatively large island at 13.5 acres. It would not be the only such island along Martin Bluff Roadboth the C-2 zone to the north and the R-2/C-2 zone to the south are of comparable size, are entirely surrounded by R-1, and contain dense multi-family housing.
*687 ¶ 23. On this record, I cannot say that any of the neighborhood changes cited by the City were immaterial. The Collinses have not met their burden to show that the changes were in accordance with the City's comprehensive plan. I would instead find that the City's rezoning decision is supported by substantial evidence, and, therefore, is a legislative decision beyond this Court's authority to disturb on appeal. I respectfully dissent.
KING, C.J., AND LEE, P.J., JOIN THIS OPINION.
NOTES
[1] While the zoning maps contained in the record do not sufficiently depict the zoning for land north of the interstate, the owners of the subject property represented to the planning commission that the one-mile section of Martin Bluff Road north of the interstate has continuous C-2 zoning. Further, at the hearing before the planning commission, the owners represented that "[t]he C-2 [area] that is currently on Martin Bluff Road has traditional two-story condo-apartment projects." Therefore, based upon these descriptions given in the record, this C-2 area north of the interstate would include the new condominium complex cited.
[2] This proximity estimate appears to refer to the distance from the subject property to Martin Bluff Road. At the planning commission hearing, the owners of the subject property discussed the possibility of purchasing the small piece of land that would give them an egress directly on Martin Bluff Road. However, the record reflects that the property across the street from this point on Martin Bluff Road is forest area that appears to be largely undeveloped and zoned R-1.
[3] It appears undisputed from the record that the City has zoning ordinances, but they have not been made a part of the record for this Court to evaluate.
[4] A larger zoning map purporting to show the entire municipality was made part of the record in documents submitted by the developer, but it is undated and reproduced in the record as a reduced size, black-and-white photocopy of what was apparently a color-coded original.
[5] The record only states that this new development was located north of Interstate 10 and east of Martin Bluff Road; the precise location is not given. As the majority notes, there is a letter from the developer in the record which states that the land "along" Martin Bluff Road north of the interstate highway is continuously zoned C-2; however the distance of the development from Martin Bluff Road is not stated. The majority's assumption that this development was "along" Martin Bluff Road and therefore on land zoned C-2 is in my judgment unfounded.